Ruffin, C. J.
 

 By the policy of the law, grand-juries act in secret: and, with the view of sustaining that policy,.
 
 *98
 
 it is prescribed that a grand-juror shall, amongst other things, swear, that “the State’s counsel, your fellows, and jmur own, you shall keep secret.” The whole sense in which those words arc to be received, or the duration of the secrecy imposed, we do not find accurately stated by any ancient writer on the common law. There are some reasons for the rule, which are obvious enough ; and, as far as the public interests can be subserved by it, the-secrecy ought to be kept, not only while the grand-jury continues empannelled, but it ought al'so to be subsequently observed. The principal ground of policy is, no doubt, to inspire the jurors with a confidence of security in the discharge of their responsible duties, so that they may deliberate and d'ecide without an apprehension of any detriment from an accused or any other person, but be free “true presentment to make.” Therefore it is clear,, that at no time nor upon any occasion ought a grand-juror to make known, who concurred in or opposed the presentment ;• as the power to do so would or might in some degree impair that perfect freedom from external bias, which a grand-juror ought to feel. Tt is probable, likewise, that another ground is, that it might lead to the escape of criminal's, if their friend’s or others on the grand-' jury -were at liberty to make known the institution and progress of an inquisition into their guilt. But as that reason can operate, only while the accused is at large, it would seem, that, as far as1 the rule depends on that, it would not be obligatory after his arrest. We think, too, that in furtherance of justice, the law may have intended to forbid a grand-juror from giving aid
 
 to one
 
 indicted; and1 thus found to be probably guilty, in his efforts to defeat the prosecution, by publishing the evidence before the grand-jury, and thus enabling him to counteract it, perhaps by foul means, after he knew where the case pinched. That would be betraying “ the State’s counsel,” which is necessarily opened to the grand-jury. But that is the immunity of the public, and'not the privilege of'the wit
 
 *99
 
 ness ; and, therefore, it would seem that the rule should create an obligation on the conscience of the juror and be enforced by a Court, only when the public justice may be advanced by it, and that it cannot be urged by the witness himself, when it would defeat justice, and thus encourage witnesses before that body to commit perjury, by false statements or the suppression of the truth. For it is obvious, that if grand jurors are, through all time and to all purposes, prohibited from disclosing and proving the testimony of witnesses before them, there is a perfect exemption from temporal penalties of perjury before a grand-jury. The consequences of such a doctrine would be alarming; for, besides the danger of tempting the witnesses to commit so great a crime without the fear of punishment, grand jurors would have no' credible evidence on which to act, on the one hand, and the citizen, on the other, would be deprived of one of his most boasted and valuable protections against arbitrary .accusations and arrests. It would be extraordinary, were witnesses thus enabled to perjure themselves without responsibility. Yet we have not found in the books an instance of an indictment for a perjury before a grand-jury, and the text writers leave it doubtful how far in principle, as they understand it, it is competent to prove what evidence was given before the grand-jury. In this State there has not been a prosecution for such a perjury, within the experience of either of the Judges sitting here. We are, however, well informed by a gentleman, formerly eminent at the Bar and afterwards on the Bench, Judge Cameros, that there was, before 1807, in the Superior Court for the district of Morganton, a prosecution for perjury committed before a grand-jury, in which the oath taken by the defendant was proved by the grand-jurors, after objection taken, and there was a conviction; followed by punishment. But evidence has been frequently given, without exception on the circuits, as w.e .ourselves know, in order to discredit a witness, that his
 
 *100
 
 testimony before the grand-jury differed from that in Court. The Judges have not considered the rule as designed for the protection of witnesses, but for that of the grand-jurors, and in furtherance of the public justice; and we own, that our minds are inclined to adopt that conclusion ; especially as in the modern case of
 
 Rex
 
 v.
 
 Watson,
 
 32 Howell’s St. Tr. 107, Lord Ellenbohoush allowed a witness to be examined as to a part of his evidence and actions before the grand-jury, and said that, though doubtful'himself, he did so upon the authority of a previous decision : of which however, he did not give the name. It seems to us, that, the witness has no privilege to have his testimony treated as a confidential communication, but that he ought to be considered as deposing, under all the obligations of an oath in a judicial proceeding; and therefore, that the oath of the grand-juror is no legal or moral impediment to his solemn examination under the direction of a Court,'as to the evidence before him, whenever it becomes material
 
 to
 
 the administration of justice. But we need not go that lengl h at present; for there was no attempt to go into the evidence of this prisoner before the grand-jury in detail, but merely to prove, that he appeared as a witness and charged the crime on one Gonzales. That was in substance what was done by Lord Kenyon in
 
 Sykes
 
 v.
 
 Dunbar,
 
 as the case is stated in 2 Selw. N. P. 815, who required a grand juror to state, that the defendant was the prosecutor of an indictment before the grand-jury.
 

 The counsel for the prisoner took the further ground here, that it was incompetent to prove the evidence of the prisoner, because it was in the nature of a confession, which, compelled by an oath, was not voluntary. It is certainly no objection to the evidence, merely, that the statement of the prisoner was given by him, as a witness under oath. He might have refused to answer questions, when he could not do so without criminating himself; and the very ground of that rule of law is, that his answers
 
 *101
 
 are deemed voluntary and may be used afterwards to criminate or charge him in' another proceeding, and such is clearly the law. 2 Stark. 28,
 
 Wheater's case,
 
 2 Mood. Cr. Cas. 45. But it is true, that if a prisoner, under examination as to his own guilt, be sworn, his statement is not evidence ; because the statute,
 
 Rev. Stat. ch.
 
 35,
 
 sec.
 
 1, (which is taken from that of
 
 Phil,
 
 and
 
 M.)
 
 intended to have the party free to admit or deny his guilt, and the oath deprives him of that freedom-2
 
 Hawk. Pl.
 
 6,
 
 ch.
 
 46,
 
 sec.
 
 37,
 
 Bul. N. P.
 
 242. And we think it was also properly decided in
 
 Leiois’ case,
 
 C. C. and P. 161, where a magistrate was engaged in the investigation of a felony, and no one in particular was then charged with it, and the prisoner and other persons were summoned and sworn as witnesses, and the prisoner gave evidence, upon which he was committed for trial, that his examination was not admissible against him. For plainly it was a case within the reason of the,statute ; which could be completely evaded, if, instead of a direct examination of a suspected person, there could be a general inquisition and every individual made to betray himself. For that reason the Court would, in this case, have held, that the evidence given by the prisoner could not have been used against him, if it purported to confess his guilt and the grand-jury had founded a presentment on it; for the proceeding before the grand-jury at the time was in its nature inquisitorial and the witness was as much the object of it as any other person. But it is altogether a mistake to call this, evidence of a confession by the prisoner. It has nothing of that character. It was not an admission of his own guilt, but, on the contrary, an accusation of another person. That it was preferred on oath in no way detracts from the inference, that may be drawn from it unfavourably to the prisoner, as being a false accusation against another, and thus furnishing, with other things, an argument of his own guilt.
 

 There was, in our opinion, no error in receiving the evidence.
 

 
 *102
 
 There is no exception, that the presiding Judge directed the jury, that the law, under the circumstances stated, raised a presumption of the prisoner’s guilt from the possession of the money, or of the goods proved, to have belonged to the deceased ; nor that he did not leave the weight of those facts fairly to the jury. But the exception is, that his Honor did not instruct the jury, that the circumstances were entitled to no weight, and therefore that they ought to disregard them altogether. Now, certainly, those are circumstances tending to connect the prisoner with the deceased at or about the time of his death ; and the Judge could not take it on himself to say, that, notwithstanding those circumstances, the prisoner was not concerned in the death, as it was the province of the jury to determine, how far they proved the fact. Indeed, if it had been proper that the Court should have given any advice to the jury on that point, we must say, that the circumstances, so far from not being entitled to any weight, are cogent evidence and raise a very high degree of probability, that the prisoner committed the murder.
 

 The Court is therefore of opinion, that there ought not to be a
 
 venire de novo.
 

 Per Curiam. Ordered to be certified accordingly.