## In re ATWELL.

(District Court, W. D. North Carolina. August 20, 1905.)

GRAND JURORS—OBLIGATION OF SECRECY—CONTEMPT OF COURT.

The obligation of secrecy imposed on a grand juror by his oath with respect to the proceedings before the body is not removed by his discharge as a juror, but continues, unless removed by the court in the interest of justice, and his disclosure to counsel for a person indicted, before his trial, of the evidence before the grand jury on which the indictment was based, is a violation of his oath and a contempt of the court, regardless of the purpose for which the disclosure was made.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Contempt, § 41; vol. 24, Cent. Dig. Grand Jury, §§ 86, 87.]

On Rule for Contempt.

At April term of the District Court of the United States for the Western District of North Carolina, at Statesville, the grand jury of which C. F. Atwell, the respondent, was a member, duly sworn and impaneled, returned as a true bill an indictment against the Old Nick Williams Company, N. Glenn Williams, and D. E. Kennedy, in which the defendants were charged with certain criminal violations of the internal revenue laws of the United States. After indict-

ment the case was duly transferred from Statesville to the District Court of the United States at Charlotte, in said district, and docketed on the trial docket for June term, 1905, of said last-named court. In the meantime the defendants were arrested, and gave the required bail for appearance at the Charlotte term of court to answer the charges preferred against them. After the arrest, and before the trial term, several members of the grand jury which returned the indictment, and, among others, C. F. Atwell, the respondent, were subpœnaed by defendants to appear at the June term at Charlotte to testify in their behalf in the case pending on said indictment, in the name of the United States against the Old Nick Williams Company, N. Glenn Williams, and D. E. Kennedy. In obedience to the said subpœna C. F. Atwell, the respondent, came to Charlotte in the first days of the term and before the case was called for trial went to the office of the attorneys for the defendants, and then and there voluntarily disclosed to them the entire testimony of the only witnesses (two in number, named Sams and Stackleather) sent by the attorney of the United States before the grand jury, and sworn and examined in regard to the crimes charged in the indictment. The defendants, using the information derived from respondent, filed a plea in abatement, on the ground that the evidence of the prosecution before the grand jury was insufficient to warrant the return as a true bill. When it was made known to the court that Atwell had disclosed to the defendants and their counsel the testimony of the United States witnesses in the case above stated before the grand jury of which he was a member, a rule was issued requiring him to appear and show cause why he should not be punished for contempt. Atwell appeared and filed his answer, in which he admitted the facts as to his action as above stated, but denied the power of the court to proceed against him for reasons, stated in his answer, which are fully set forth in the opinion. The court held him guilty of contempt, and imposed a fine of $50 and costs, from which judgment he sued out a writ of error to the Circuit Court of Appeals for the Fourth Circuit.

A. E. Holton, U. S. Atty., and A. H. Price, Asst. U. S. Atty., for the rule.

Burwell & Cansler, Moore & Rollins, and W. P. Bynum, Jr., opposed.

BOYD, District Judge (after stating the facts). The important question involved in this case is as to the meaning and scope of the oath taken by a grand juror, and especially that portion of the obligation which enjoins secrecy. It is insisted by the counsel for the respondent that the injunction of secrecy imposed upon the grand juror is a privilege personal to the individual, which may be waived by him at any time, and that, so far as the power of the court to enforce the injunction is concerned, that ceases when the grand juror is discharged. I regard both of these propositions as untenable. It is true some recent commentator on the powers and duties of grand juries has expressed the views presented here by the counsel, but no judicial decision has been produced or cited to sustain the position. From time immemorial grand juries have held their sessions and have conducted their investigations with closed doors—in secret. This course of proceeding is for a wise purpose, and many sufficient reasons may be assigned for it. It would be productive of most pernicious results, and largely destructive of the usefulness of criminal tribunals, to open the doors of the grand jury rooms to the public, and scarcely less damaging to orderly proceedings and the due administration of the criminal laws of the land would be to open avenues of information from the grand juries to persons against whom charges of a criminal nature are pend-

ing. In the earlier history of the grand jury, as a co-ordinate branch of the English criminal courts, if a grand juror disclosed to a person accused the evidence before the grand jury in his case, such grand juror became accessory to the crime, if it was a felony, and a principal, if it was treason, and later such disclosure was considered a high misdemeanor. 4 Blackstone, 126; 1 Chitty's Criminal Law, 214.

To show how sacredly the proceedings before the grand juries have been guarded, and how unwilling the courts have been to open the way for their publication, attention may be called to an instance cited by Judge Sharswood in a note to chapter 10, § 126, book 4, Blackstone's Commentaries:

"A few years ago at York a gentleman of the grand jury heard a witness swear in court upon the trial of a prisoner directly contrary to the evidence which he had given before the grand jury. He immediately communicated the circumstance to the judge, who, upon consulting the judge in the other court, was of the opinion that public justice in the case required that the evidence which the witness had given before the grand jury should be disclosed, and the witness was committed for perjury, to be tried upon the testimony of the gentlemen of the grand jury."

It will be observed that in this case, although it was made known to the judge that the witness had committed perjury, yet so careful was he to maintain that secrecy which is one of the main elements of the strength and usefulness of a grand jury that he declined to take action until he had advised with another judge, and then only upon the ground that public justice required it was the veil of secrecy removed, and the proceeding before the grand jury permitted to be disclosed. "Let all things be done decently and in order," says St. Paul. This is a rule laid down by Divine authority for the government of human action, and it applies as well to judicial tribunals as to other affairs of men. It is neither decent nor orderly for a member of a grand jury, as soon as he is discharged from active duty, to advise persons accused by the body of which he was a member of the testimony of the witnesses against them; thus disclosing the evidence of the prosecution to the party charged before the trial, and affording him the opportunity of counteracting it by subornation of perjury or other foul means, if necessary.

In the case of State v. Broughton, 29 N. C. 96, 45 Am. Dec. 507, it is said:

"By the policy of the law, grand juries act in secret, and, with the view of sustaining that policy, it is prescribed that a grand juror shall, among other things, swear that 'the state's counsel, your fellows', and your own you shall keep secret.' "

Commenting in this case on the duration of the obligation of secrecy, it is said:

"There are some reasons for the rule which are obvious enough; and, as far as public interests can be subserved by it, the secrecy ought to be kept, not only while the grand jury continues impaneled, but it ought also to be subsequently observed."

Among other and convincing reasons assigned by the Supreme Court of North Carolina in support of the propriety of this obligation of secrecy and its binding effect upon the grand juror is the following:

"We think, too, that, in furtherance of justice, the law may have intended to forbid a grand juror from giving aid to one indicted, and thus found to be probably guilty, in his efforts to defeat the prosecution, by publishing the evidence before the grand jury, and thus enabling him to counteract, perhaps by foul means, after he knew where the case pinched. That would be betraying the state's counsel, which is necessarily opened to the grand jury."

A perusal of the opinion of the court in the Broughton Case, which was delivered by Chief Justice Ruffin, one of the most profound lawyers of his day—indeed, I may well say, of any day either before or since—will aid to impress us still further with the sacred manner in which the courts themselves guarded the secrecy which was enjoined upon grand jurors in respect to proceedings before them. Broughton was indicted and was on trial for the murder of one Frank De Silva. Prior to his indictment the prisoner had himself testified before the grand jury which had the murder of De Silva under consideration that one Gonzales killed the deceased. On the trial of the indictment against Broughton, the state offered to prove by Mr. Savage, who was foreman of the grand jury before which Broughton had been examined, that when so examined he charged Gonzales with the murder and betrayed unusual anxiety to fix it upon him. The prisoner's counsel objected to the testimony proposed, on the ground that Savage would be disclosing the secrets of the grand jury. The trial court overruled the objection and admitted Savage to testify. The question, however, was so much in doubt that the prisoner's counsel appealed on that point alone. The Supreme Court affirmed the ruling, but the decision was on the ground that the secrecy enjoined was the immunity of the public, and not the privilege of the witness; and in this case the court held, substantially, that this obligation of secrecy was upon the conscience of the juror, there to remain until the courts in the interest of public justice should see proper to remove it, and, continuing in the opinion and laying it down as the law, that the courts have the power to remove the injunction of secrecy and lift the obligation from the conscience of the jurors, when it is necessary to prove perjury committed before them. The court also comments on the fact that "the text writers leave it doubtful how far in principle, as they understand it, it is competent to prove what evidence was given before the grand jury." Indeed, it was contended in the Broughton Case that the injunction of secrecy placed upon grand jurors by the oath and the law was far-reaching enough to protect the witness, and that grand jurors could not disclose the testimony of a witness taken before them, even under the direction of the court and in the furtherance of public justice. However, the court said:

"The judges have not considered the rule as designed for the protection of witnesses, but for that of the grand jurors, and in furtherance of the public justice; and we own that our minds are inclined to adopt that conclusion, especially as in the modern case of Rex v. Watson, 32 Howell's St. Tr. 107, Lord Ellenborough allowed a witness to be examined as to a part of his evidence and actions before the grand jury, and said that, though doubtful himself, he did so upon the authority of a previous decision, of which, however, he did not give the name. It seems to us that the witness has no privilege to have his testimony treated as a confidential communication, but that he ought to be considered as deposing under all the obligations of an oath in a judicial proceeding, and therefore that the oath of the grand juror is no legal or moral

impediment to his solemn examination under the direction of a court as to the evidence before him, whenever it becomes material to the administration of justice."

Aside from the obligation of the oath, it has been for all time a rule which has obtained both in the federal and state courts in North Carolina that proceedings before the grand juries should not be disclosed or made public by the jurors themselves, except in such cases as the ends of justice might require, and then only by permission of, and under the direction and supervision of, the court.

A very able and forceful opinion was delivered by Judge Morrow, then upon the district bench, but now one of the Circuit Judges of the Ninth Circuit. In re Summerhayes (D. C.) 70 Fed. 769. That was a case in which a grand juror revealed the proceedings of the grand jury of which he was a member to outside parties, and discussed with said parties certain matters which were pending before the grand jury. It is held in that case that a federal grand juror may be punished for contempt for disregarding the injunction of secrecy imposed by the oath. In the course of the opinion the learned judge says:

"It is one of the inheritances we have as an English-speaking people, coming down through the long channels of the common law, to respect and sustain the sanctity of the jury room and the secrecy of the procedure of investigation provided for grand jurors."

Counsel for the defendants in the indictment in question state that the respondent disclosed to them the testimony of Sams and Stackleather, delivered before the grand jury, in order that they might file a plea in abatement, on the ground that the testimony was not sufficient to warrant the return of a true bill against the Old Nick Williams Company, N. Glenn Williams, and D. E. Kennedy. In the opinion of the court the juror is as much forbidden (except under the special circumstances provided by the law) to divulge the secrets of the grand jury room for one purpose as for another. It is not the province nor the privilege of the juror to determine when and where he shall relieve his conscience of the obligation of the injunction and remove the veil of secrecy in order that he may divulge and make public that which' has come to his knowledge as a member of the grand jury. No principle of law is more definitely declared than that which forbids members of a jury returning a verdict to impeach it, and it is equally well settled that the testimony of a member of a grand jury by which an indictment is found is not admissible for the purpose of impeaching the indictment. 17 A. & E. Encyclopedia (2d Ed.) p. 1295, and authorities cited under note 4.

It is a rule of practice in the courts of the United States that the prosecuting attorney may be present in the grand jury room for the purpose of examining the witnesses whom he offers upon the charges in an indictment which he has sent, and in State v. Broughton, supra, the court says that the testimony of the prosecuting witnesses is the counsel of the attorney. Upon the findings of fact, which, except those of record, are the admissions of the respondent, it is clear that he divulged the counsel of the United States, the counsel of his fellows, and his own. In Broughton's Case, supra, it is laid down as the law

that a grand juror who gives aid to one indicted by publishing the evidence of the prosecution before the grand jury betrays the state's counsel, which is necessarily opened to the grand jury. The meaning of "counsel," as used in the oath of a grand juror, is not confined alone to the advice which the prosecuting attorney may give to the grand jury. It has a broader significance in this connection, and comprehends the plan, the purpose, of the government, as represented by its officer. One of the definitions given of the word "counsel" by Worcester is "conclusion formed from deliberation or consultation, and designed to be secret." And Shakespeare evinced a perfect conception of the full meaning of the word when, in the play of Hamlet, Prince of Denmark, he makes Hamlet to say: "The players cannot keep counsel. They tell all."

The chief defense interposed by the respondent in this case is based on section 725 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 583], which defines the powers of federal courts in contempt proceedings, and it is contended by his attorneys that under that statute his conduct is not a contempt of court. Indeed, they go further, and insist that he has not even been guilty of an impropriety. It is admitted that the section referred to restricts very materially the power formerly existing in the courts of the United States to punish for contempt; but, notwithstanding this, the law as it stands is sufficient to empower the courts to protect themselves against conduct which obstructs the due and orderly administration of justice, and to enforce obedience at the hands of parties, jurors, witnesses, or other persons to lawful process issued by the courts and to orders and decrees, made or entered, as well as to rules and commands established and issued for the government of federal tribunals and the seemly transaction of their business. The contention of the respondent is urged by his counsel on the ground that, when the grand juror is discharged at the close of the term for which he was sworn and impaneled, he is no longer amenable to the court, and that the obligation resting upon him by virtue of his oath no longer exists. If that be the law, the injunction of secrecy imposed upon grand jurors is a worthless and idle form, and it would be as well to admit persons against whom criminal charges are being investigated into the grand jury room and let them hear the witnesses testify; for they would only have to wait at the door until the grand jury was discharged and then be advised as to the entire testimony relied on by the prosecution, and not only that, but be informed of what took place in the deliberations of the grand jury at every stage of the proceeding—what any juror may have said, how each one voted on the indictment, who, if any, were friendly to the accused, and who, if any, took a decided stand against him. It would take no stretch of the imagination to readily conceive the disorders, corruptions, and miscarriages of justice which would follow, if the law permitted such conditions to exist. If there is no further protection to proceedings before the grand jury after it is discharged, if the sacredness of the oath extends no further than to bind the juror during the term for which the jury with which he serves is impaneled, if all a person charged with crime has to do is to

await the discharge of the grand jury which has investigated his case, and before his trial be fully informed of all the evidence against him, with every declaration, act, or circumstance in the testimony, and thus be enabled, as said in State v. Broughton, to see where the case pinches and counteract it by any means, fair or foul, then, in the language of Judge Morrow (In re Summerhayes, supra):

"The courts may as well close their doors and let the administration of justice fall into the hands of those who will deal in it as an article of personal favor or purchasable merchandise."

But, if the law and the obligation of the oath which he has taken for any good reason forbids the grand juror to disclose the proceedings before his body as soon as he is discharged, then for the same reason he is required to continue to withhold from publication that which has come to his knowledge in the grand jury room, at least until such persons as were indicted have been tried, or the court itself in the interest of public justice removes the injunction.

Another view may also be presented, and that is, although the respondent had been discharged from active service as a grand juror at the close of the term for which he was drawn and impaneled, yet he was still a regular juror of the court. He had been duly selected as a juror at Statesville, and his name was, and still is, in the jury box there. He continues to be an elemental part of the court, one of its instrumentalities for active use, when necessary in the due course of its proceedings. Occupying this relation to the court, he is subject to its rules, and at all times under an obligation to act with that propriety becoming a good and lawful man. Is his conduct in this case consistent with these requirements? Most certainly not. As a sworn member of a grand jury, and, whilst acting in that capacity, he learns the evidence of the government against parties charged with crime, and within a short time, whilst the case is pending against the parties and before the trial, he goes voluntarily to them and their attorneys, and of his own volition discloses to them the entire testimony of the government witnesses examined before the grand jury, putting them in full possession of the case of the prosecution given to the grand jury by the attorney for the government and relied on by him. No matter for what purpose the defendants and their counsel desired the information, the conduct of the respondent is equally reprehensible. The result of his action was a betrayal of the counsel of the United States, and the defendants had the information which respondent gave for any purpose or for all purposes their interests might suggest.

It is argued in respondent's behalf that the court quashed the indictment against the Old Nick Williams Company, N. Glenn Williams, and D. E. Kennedy, and that therefore the respondent, who had furnished the information upon which the plea in abatement is based, was justified. This point is not well taken, for the action of the court in quashing the indictment, as was distinctly stated from the bench at the time, was not because of the matter set up in the plea, but altogether for other reasons, the principal one being the fact that members of the grand jury which returned the indictment had before the trial armed the defendants and their counsel with a full statement of the

government's case; and the attorney for the United States in open court announced that he was prepared at once to send before the grand jury then in session another bill with other and additional testimony. Under the circumstances the court was of opinion that a new bill should be sent before a grand jury which it was assumed would keep the counsels required by law. In taking this course the court simply exercised its discretion, and pursued that course which in its opinion would be conducive to the due administration of justice. "While the grand jury in its deliberations acts to some extent independently of the court, and is a co-ordinate authority therewith, it is a branch over which the court has general supervision and authority." 17 A. & E. Encyclopedia (2d Ed.) p. 1273. The court expressly refused to recognize the proposition as law that a presiding judge is required to go behind the return of the grand jury of his court and pass upon the sufficiency of the testimony in a case in which such grand jury has taken action. The court will not go behind the return of the grand jury to inquire into the sufficiency of the evidence. U. S. v. Reed, 2 Blatchf. (U. S.) 435, Fed. Cas. No. 16,134; 17 A. & E. Encyclopedia (2d Ed.) p. 1285. In his opinion in Reed's Case, Mr. Justice Nelson says:

"I am aware of no case where any court has ever re-examined the evidence before the grand jury to see whether it was sufficient. The result of such a practice would be that in every case the court would be obliged to try a party on affidavits on a motion to quash the indictment."

The courts have, by a system of practice which has been practically uniform throughout the country, settled substantially the principles relating to pleas in abatement and motions to quash indictments. Where it appears that there was no evidence before the grand jury, as, for instance, the witness is not sworn, or the only witness is incompetent to testify, which latter would apply in case a wife was the sole witness examined on an indictment against her husband, unless it be in a case in which she is made competent by statute, in such case the indictment should be quashed. The courts will also take cognizance of a plea in abatement or motion to quash, founded on the allegation, properly made and presented, that the grand jury before which a bill of indictment was pending had been guilty of misconduct in connection with the investigation, or that improper influences had been exercised to affect the action and conclusion, or that some or all of the jurors were disqualified. To say that the court will go behind the return and undertake to inquire as to the quantum of testimony before the grand jury, and determine its sufficiency, would be to assume the powers of the grand jury, and would, as a consequence, involve the courts in endless turmoil and confusion. The result would be that in all cases, particularly those of importance, pleas in abatement and motions to quash would intervene, and the courts would be called upon to re-examine the witnesses who testified before the grand jury, probably permit cross-examination by counsel, have members of the grand jury present to see if the witness made the same statement as that given in the grand jury room, and, if not, to permit the grand jurors to testify in contradiction, etc., ad infinitum. It is easy to see what such a course of procedure would lead to.

The defendant in a criminal action is no more entitled as a matter of right to know the evidence of the prosecution until it is disclosed on the trial than is the prosecution to be put in possession of the evidence which the defendant has in mind to offer in his defense. In some instances, particularly in North Carolina, the courts in capital felonies have accorded to the counsel for the prisoner the privilege of interviewing the witnesses for the state before the trial; but no one has ever suggested that the law entitled the prisoner to such consideration. It is a courtesy extended by the court, usually with the assent of the state's counsel, in favorem vitæ. It is no part of the business of a grand juror to furnish a defendant who has been indicted the ammunition with which to return the fire of the prosecution, nor does the law permit grand jurors to put persons indicted by their body in possession of material with which to impeach their action. In his action the respondent violated an obligation resting upon him as a grand juror of the court. He willfully disregarded a rule of the court which he was required to observe, and the result of his conduct has been to impede and embarrass the due administration of justice. His behavior was improper, and it tended at least to impair, if not to defeat, the ends of justice. By divulging the testimony taken for the prosecution before the grand jury, he has betrayed the counsel of the United States, and unlawfully made public the proceedings of the body of which he was a member.

For these reasons the rule against the respondent is made absolute. He is adjudged guilty of contempt of the court, and ordered to pay a fine of $50 and the costs of the proceeding.