STATE v. MARY REDFERN AND JOHN HENRY REDFERN.

(Filed 22 May, 1957.)

**1. Homicide § 25—**

Testimony of a confession by defendant that he shot the deceased, together with testimony that deceased died as a result of the bullet wound thus inflicted, raises the presumption of an unlawful killing with malice, placing the burden upon defendant to satisfy the jury of facts mitigating the homicide to manslaughter, or justifying it on the ground of self-defense, and is sufficient to take the case to the jury on a charge of second degree murder and support a verdict of guilty of manslaughter upon defendant's evidence in mitigation.

**2. Criminal Law § 8b—**

While mere presence alone at the time of the commission of a crime is insufficient to constitute a person an aider or abettor, a person who is present, either actually or constructively, and who shares the criminal intent of the actual perpetrator and renders assistance or encouragement to him in the perpetration of the crime, is an aider or abettor, and is equally guilty with the actual perpetrator.

**3. Same—**

The guilt of an accused as an aider or abettor may be established by circumstantial evidence.

**4. Criminal Law § 32a—**

Conflicting statements voluntarily made by the accused at the scene of the homicide as to the manner in which the fatal injury was inflicted, is substantive evidence of guilt as tending to show the mental processes of accused in seeking to divert suspicion and to exculpate himself.

**5. Homicide § 25—Evidence held sufficient to be submitted to the jury on the question of femme defendant's guilt of murder in second degree.**

Testimony tending to show that husband and wife had been fighting for some hour and a half, with numerous blows struck on both sides, that the wife then called her son and told him "to get the rifle," and that he picked up the rifle and fired the shot resulting in the husband's death, together with voluntary conflicting statements made by the wife at the scene of the crime tending to show consciousness of guilt by attempting to divert suspicion and to exculpate herself, *is held* sufficient to be submitted to the jury as to her guilt of murder in the second degree as an aider and abettor, notwithstanding her testimony at the trial, at variance with the extrajudicial confessions made at the scene, that she told her son to get the rifle only for the purpose of returning it to their landlord.

APPEAL by defendants from *Crissman, J.*, and a jury, August Term, 1956, of UNION.

Criminal prosecution on indictment charging the defendants with the murder of A. J. Redfern.

When the case was called for trial, the solicitor announced he would not prosecute the defendants for first degree murder, but would ask for a verdict of murder in the second degree or manslaughter as the evidence might disclose.

The evidence on which the State relies may be summarized as follows: The deceased A. J. Redfern was the husband of the defendant Mary Redfern. The defendant John Henry Redfern is their 17-year-old son. All three lived together just outside the corporate limits of Marshville on a place belonging to Pless Hargett. The house sits back from the road in a field. On the night of 29 July, 1956, Dr. J. P. U. McLeod, coroner of Union County, was called to the Redfern home and arrived about midnight. Both defendants were at the house when he arrived. He saw A. J. Redfern lying on the ground about 17 yards from the steps of the house. He was lying face down and was dead. The part of his body next to the ground was still warm. He had a bullet hole in the center of his chest at the level of the nipples. There was a ragged hole in his left wrist about an inch in diameter. He had a strong odor of alcohol on him. The only clothes he had on was a pair of pants and a piece of undershirt wrapped around his right arm. The rest of the undershirt was lying on the front porch. The undershirt was bloody in front. The bullet hole was in the piece that was wrapped around his arm. There was a slight powder burn on the undershirt, but none on the skin. Dr. McLeod testified that in his opinion death was caused by the bullet wound in the chest—made by a .22 caliber bullet; that there was no blood on the pants or feet of the deceased, but when he examined inside the house, "there was blood all over the house. . . . Most of the blood was in the bedroom, the living room, and the door between them." Blood was scattered all over the floor of the front bedroom, mostly on the floor and on objects that were lying on the floor. In the adjoining living room there was blood on the floor, on the sofa and on the chair. There was a pair of shoes that belonged to the deceased. They were bloody, both inside and out. The blood was coagulated but not dry. Dr. McLeod further testified: "Mary Redfern . . . had a cut on one finger . . . there was some blood on her clothing but not much. She told me the place on Coot's (deceased's) wrist she gouged with the scissors . . . but that . . . all the blood came from her finger. . . . She told me she made the place on the left wrist when they were fighting, . . . that night. She said that they had one fight right after another, there was no let-up between them; . . . She told three or four different tales; she first said she was fighting with Coot and that they were struggling for the gun, the gun went off and she thought it went into the ceiling, but it must have went out the door and he walked out, she hadn't seen him since; she stated . . . that if he was shot he shot himself; she said the rifle was fired

only one time. Her second statement was that she was struggling with him and that he had hold of the gun and shot the gun and the bullet went out the front door. . . . The third statement was that he hit her and knocked her out; she was lying on the sofa and didn't know anything more about it until she heard the gun fire; . . . she said he hit her and she was lying on the sofa unconscious; . . . She said she did not touch the gun. Her fourth statement was practically the same as the third. . . . She was pretty high. . . . She . . . had on regular clothes . . . one piece of cloth . . . was torn off . . . the front of her dress. . . . She complained about her finger hurting. . . . John Henry Redfern . . . told me that he was asleep and didn't know anything about it; he was in another room on the bed asleep, and when he heard the gun go off he came out into the room; . . ." Later, he admitted to Coroner McLeod that "he was not in bed when the shot went off."

. Chief of Police W. E. Ashcraft testified that he went to the Redfern house about 1:30 o'clock; that John Henry and Mary were sitting on the front porch; that Mary had a strong odor of some intoxicant on her breath; that he detected no such odor on John Henry and he appeared to be sober. "John Henry said that if his father was shot, he accidentally shot himself. Mary Redfern said that she did not have hold of the gun; she heard it fired and thought the bullet went out the front door. . . . She said that A. J. (deceased) was in the living room when the gun fired . . . if he was shot he accidentally shot himself. . . . When we got to the jail John Henry said 'Well, I was the one that shot him.' Mary was present. That was about 30 minutes after he made the other statement. . . . I saw a .22 rifle there that night; it was unloaded; . . . it is the rifle that John Henry said he shot his father with."

Deputy Sheriff H. C. Dutton testified he had a conversation with John Henry the day following the shooting in which he said "He shot his father with a .22 rifle standing in the front door of the house and that his father was standing just inside of the door leading into the kitchen. . . . He was standing just outside of the front door and had the screen pushed partially open, and pointed the rifle in the direction of the kitchen which (where) he stated that his father and mother were standing just inside of the kitchen door. He said he was just far enough on the porch (so) he could stand on the porch and push the screen door open and point the rifle back. He said he fired once, and he said that he ran up to Mrs. Pless Hargett's, white neighbors of theirs, . . . and left the rifle at Mr. Hargett's home, about 300 yards away." Officer Dutton also testified that he had a conversation with Mary Redfern the same morning; that she said "she had come from up in New Town (a colored residential section of Marshville) at about 9:30 and that

her husband was drinking, and they got into an argument because her husband accused her of being with the wrong company that night; . . . that after the argument started A. J. got the rifle and she ordered him to lay the rifle down, which he did immediately . . . and that she told the boy to get the rifle and the boy did as she directed. . . . John Henry told me that he didn't know which door his father went out; that when he fired, he ran."

Mary Redfern pleaded not guilty and, testifying as a witness in her own behalf, stated that before the shooting occurred she and her husband had engaged in a continuous fight for an hour and a half, during which time numerous blows were passed between them; that finally the deceased hit her over the head with a fireplace shovel; that this lick knocked her unconscious and she knew nothing of the shooting; that when she regained consciousness she was lying on the sofa and the shooting was over.

The defendant John Henry Redfern went upon the stand and testified that his father, after knocking his mother unconscious, proceeded to advance on him with the shovel in hand, threatening to kill him; and that thereupon he, the defendant John Henry Redfern, shot his father in self-defense.

There was a jury verdict of guilty of manslaughter as to each defendant. From judgment imposing prison sentences, both defendants appeal.

*Attorney-General Patton and Assistant Attorney-General Love for the State.*

*E. Osborne Ayscue for the defendants.*

JOHNSON, J.   Was the evidence sufficient to overcome the defendants' motions for nonsuit and carry the case to the jury as to each defendant? These are the only questions presented for decision.

The evidence that John Henry Redfern confessed that he shot his father, when considered with the coroner's testimony that the deceased died as a result of the bullet wound in his chest, was sufficient to raise the presumption of an unlawful killing with malice and carry the case to the jury as against John Henry Redfern on the issue of second degree murder. *S. v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *S. v. Robinson,* 226 N.C. 95, 36 S.E. 2d 655. It was incumbent on this defendant to satisfy the jury of the truth of facts showing absence of malice and mitigating the homicide to manslaughter, or justifying it on the ground of self-defense. *S. v. Gordon, supra.* The jury by returning a verdict of guilty of manslaughter resolved the question of mitigation in favor of the defendant but rejected his plea of justification. In the absence of the judge's charge to the jury, which was not included in the record,

it is assumed that the views of this defendant respecting his plea of self-defense were adequately presented to the jury.

As to the defendant Mary Redfern, the theory of the trial was that John Henry Redfern fired the fatal shot and that Mary Redfern was guilty as a principal in the second degree, she being present aiding, abetting, or encouraging her son in the perpetration of the unlawful act. *S. v. Minton,* 234 N.C. 716, 68 S.E. 2d 844.

Where two persons aid or abet each other in the commission of a crime, both being present (either actually or constructively), both are principals and are equally guilty. *S. v. Holland,* 234 N.C. 354, 67 S.E. 2d 272; *S. v. Jarrell,* 141 N.C. 722, 53 S.E. 127.

"A person aids or abets in the commission of a crime within the meaning of this rule when he shares in the criminal intent of the actual perpetrator (*S. v. Oxendine,* 187 N.C. 658, 122 S.E. 568), and renders assistance or encouragement to him in the perpetration of the crime." *S. v. Birchfield,* 235 N.C. 410, 70 S.E. 2d 5.

True, "Mere presence, even with the intention of assisting in the commission of a crime, cannot be said to have incited, encouraged, or aided the perpetrator thereof, unless the intention to assist was in some way communicated to him; but if one does something that will incite, encourage, or assist the actual perpetration of a crime, this is sufficient to constitute aiding and abetting." *S. v. Hoffman,* 199 N.C. 328, 333, 154 S.E. 314.

It is elemental that the guilt of an accused as an aider and abettor may be established by circumstantial evidence. *S. v. Holland, supra; S. v. McKinnon,* 197 N.C. 576, 150 S.E. 25.

In considering whether the evidence tending to implicate Mary Redfern was sufficient for submission to the jury, these facts and circumstances developed by the testimony come into focus:

Mary Redfern and her deceased husband were engaged in a fight. The 17-year-old son, John Henry, who was in another room, took no part in the fight until he was called by his mother. The fight had been going on for about an hour and a half. The deceased husband had bit Mary Redfern's finger, causing it to bleed profusely, so she said. She testified on cross-examination that he had slapped her in the face, had hit her on the head with a shovel, and was threatening her with a rifle. It is inferable that she was tiring of the fight and had had enough. She said she was mad. She called her son and told him "to get the rifle." He picked it up and according to his statement proceeded to fire the fatal shot. When interviewed by the officers a short while after the shooting, Mary Redfern made various conflicting statements about how the deceased met his death. These conflicting statements voluntarily made at the scene of the homicide, tend to reflect the mental processes of a person possessed of a guilty conscience seeking to divert

suspicion and to exculpate herself. This line of testimony was substantive evidence of substantial probative force, tending to show consciousness of guilt. *S. v. Yearwood,* 178 N.C. 813, 101 S.E. 513; *S. v. Spencer,* 176 N.C. 709, 97 S.E. 155; *S. v. Rowe,* 98 N.C. 629, 4 S.E. 506; *S. v. Broughton,* 29 N.C. 96; *S. v. Swink,* 19 N.C. 9; Wigmore on Evidence, Third Ed., Sections 173, 273, and 277.

The series of events and circumstances disclosed by the evidence was sufficient to sustain the inference that Mary Redfern incited, or at least encouraged, her son to commit the homicide under circumstances making her guilty as a principal in the second degree.

We have not overlooked the testimony of Mary Redfern to the effect that when she called her son and told him to get the rifle, she did not tell him to shoot the deceased but to take the rifle back to the home of their landlord, Mr. Hargett, where it belonged. However, it is noted that this exculpatory statement of Mary Redfern was made by her as a witness in her own defense. It is no part of her previous extrajudicial statement made to the officers and related by them as witnesses for the State.

The case was properly submitted to the jury as to both defendants. No error.