STATE v. CHESTER LEE GODWIN.

(Filed 11 October, 1967.)

**Homicide § 20—**

Evidence tending to show that defendant and his companions had been drinking and playing poker, and that one or two nonfelonious assaults had broken out between them during the course of the evening, that defendant and his companions left the building and another altercation broke out, and that defendant intentionally shot deceased with a pistol, inflicting mortal injury, without any evidence that deceased at that time was advancing upon defendant or threatening him in any way, *held* amply sufficient to overrule defendant's motion to nonsuit and to sustain his conviction of manslaughter.

APPEAL by defendant from *Cowper, J.,* 30 January 1967 Criminal Session of NASH.

Criminal prosecution upon an indictment charging the defendant on 12 December 1966 with the first degree murder of one Frederick Jones Bell. G.S. 15-144.

On 3 January 1967 defendant executed an affidavit of indigency before the assistant clerk of the Superior Court. On the same day, May, J., presiding, appointed Royal G. Shannonhouse, a member of

the Nash County Bar, to represent defendant. After the appointment of Mr. Shannonhouse to represent defendant, defendant obtained funds from friends and employed W. O. Rosser, a member of the Nash County Bar, to represent him. At the trial in the Superior Court, defendant was represented by both attorneys. At the inception of the trial, the solicitor announced in open court that the State would not seek a verdict of guilty of murder in the first degree but would seek a verdict of guilty of murder in the second degree or a verdict of guilty of manslaughter, as the facts might appear. The defendant pleaded not guilty. Verdict: Guilty of manslaughter.

From a judgment of imprisonment in the State's prison for a term of 20 years, defendant appeals to the Supreme Court.

*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*

*Royal G. Shannonhouse for defendant appellant.*

PER CURIAM. After the defendant appealed to the Supreme Court, W. O. Rosser announced to the court that he was no longer appearing for the defendant unless some other arrangements were made for his fee on appeal. Whereupon, Cowper, J., who had presided at the trial, found that defendant was still an indigent, and appointed Mr. Shannonhouse to represent him on appeal. He also entered an order that Nash County should pay the cost of preparing a transcript of the evidence at the trial and of the charge of the court for the purpose of appeal and that Nash County should pay for mimeographing the case on appeal and the brief of defendant's counsel in the same way that appeals are prepared for this Court on the part of rich people.

The State offered evidence; the defendant offered none. Defendant has only one assignment of error, and that is the denial of his motion for judgment of compulsory nonsuit made at the close of the State's evidence.

The testimony of Gerald Measley, a witness for the State, tends to show the following facts: Measley is 17 years old. On the afternoon of Sunday, 11 December 1966, and until about 1:00 or 1:30 in the morning of December 12, Chester Lee Godwin (defendant), Milton Hair, Gordon Creech, Pete Narron, Ted Bell (the deceased, who is also known as Frederick Jones Bell), Grover Bissette, and Sam Narron were playing poker and drinking alcoholic liquors in a filling station or grocery store near Middlesex, North Carolina, known as Beaver Dam Center and operated by Pete Narron. Measley

was keeping the fire in the heater. Defendant wanted to give Sam Narron a drink. Ted Bell did not want him to do so. Defendant told Ted, "Because you weigh about 400 pounds, you ain't going to run over top of nobody." Defendant used some profanity. Ted threw off his coat and backed defendant down to the other end of the counter. He did not grab or hit defendant. No licks were passed. They apologized and said it was all over with, and went back and played some more poker. They played four or five more hands and Ted Bell said he knew where there was some good brandy. Defendant gave Ted $25 to go and get the brandy and let Ted drive his car. Ted was gone about an hour. Defendant was playing poker during that time. Ted came back and said he had the brandy in a gallon jug. They all took a drink of the brandy. Then Measley carried the brandy back to the car. Defendant went out and got the brandy again, brought it back in, and put it on the counter. Defendant and Ted both drank until they were about drunk. Then Ted and defendant and Grover Bissette went outside. After they went out, Gordon, Pete, Dalton and Measley went outside. When Measley got outside, he saw Gordon Creech knock Grover Bissette down. This assault started over something that had happened about two years ago when Gordon had a broken arm in a sling and Grover knocked him down. After Gordon hit Grover, Grover said, "Hit me again and we will be even." At that time defendant and Ted Bell were standing outside. Measley testified as follows:

> "After that trouble was over between Gordon and Grover Ted Bell told Gordon, 'What you want to hurt him for? He ain't never hurt nobody.' Then Ted Bell hit Gordon Creech and Gordon hit him back. They just hit one time apiece. When Ted hit Gordon, Chester Lee Godwin was standing over there in front of his car. Chester had a weapon at that time. I cannot say what kind of weapon he had, but I could see about an inch of the barrel. After Ted and Gordon had hit each other once, Chester told Ted to back up against the door, pulled off his coat and said Ted might be bad but he would not be bad no more. Then Chester shot Ted. All I saw was one shot. Ted was 10 to 15 feet from Chester when he was shot. Chester said nothing at all to Ted before he shot him other than what I have just testified."

After defendant shot Ted, Ted fell to the ground on his stomach with his face down in the dirt. Defendant went over to him and kicked him in the head. At that time defendant had his gun in his right hand. Ted did not move or say anything after he hit the

ground. After defendant kicked Ted in the head while the latter was lying on the ground, defendant got in his car and left.

Gordon Creech, a witness for the State, testified in material part as follows: He was at the store when it was being closed for the night. Pete Narron, an Evans boy, and he went outside. He and Grover Bissette had an argument, and he hit Grover and knocked him down. Ted Bell took it up and told him not to hit Grover any more, and he told Ted he would not unless Grover wanted some more of it. He and Ted started arguing, and Ted hit him above the eye and on the chin, and he hit him back about twice. Then they stopped fighting, and that was all there was to that. He does not know where defendant was while Ted Bell and he were fighting. After they stopped fighting, defendant came up and shot Ted Bell. Ted did not do anything to defendant outside the store. Ted had no kind of weapon that he saw. Ted was not doing anything to defendant that he saw. Ted was about 8 to 10 feet from defendant when he shot him. Defendant used some profanity before he shot Ted and told him he was a "bad s. o. b." After defendant shot Ted, Ted was on the ground lying on his face. Defendant came up to him and pointed the pistol back of his head. He asked defendant not to shoot Ted any more, and he did not.

Pete Narron, a witness for the State, ran the Beaver Dam Grocery. He knew he had a pretty rough crowd there.. He testified as follows:

"There was no trouble that I know of between the time Chester and Ted had their little argument and the time I closed up. After I closed up, I heard Gordon Creech and Grover Bissette arguing on the outside. Gordon hit Grover Bissette and then Ted Bell hit Gordon and Chester Godwin was out there and had a gun in his hand. I put the change box in the car and when I was at the car I heard a gun fire. When I turned back around, Ted Bell was on the ground. I had forgotten to put the lock on the door and I went back to lock the door and Chester Godwin turned around with the gun toward me and I said, 'Damn, Chester, what's the matter?' and he said, 'I mistook you for somebody else.' Then I turned and went back toward the car and, as I was going back, he pointed the gun down towards the ground toward's Bell's head, and I said, 'Don't shoot no more,' and I got in the car and started to leave.

"Ted Bell was on the ground at the time Chester started to shoot him again. He was lying with his face down towards the ground. I heard Chester say to Ted before he shot him, 'You are a bad s. o. b.' After he said that is when I heard the

shot. After I asked Chester not to shoot him again, he turned and got in his car and left."

G. O. Womble, sheriff of Nash County, has known defendant for about 15 years. He knew Ted Bell. In response to a telephone call from Deputy Sheriff Gilliam, he went to the Beaver Dam Grocery about 2:20 a.m. on December 12. Upon arrival he saw Ted Bell lying on his face on the ground dead in front of the Beaver Dam Grocery. He had one bullet wound in his left side four inches from his left breast and two inches below his left breast. After defendant had been placed in jail charged with the homicide, Sheriff Womble had a conversation with him. Sheriff Womble warned him fully of his constitutional rights, and defendant freely and voluntarily made a statement to him after having been warned fully of his constitutional rights. The court found as a fact after the sheriff had been examined on the *voir dire* that the sheriff had warned defendant fully of his constitutional rights, and that the statement was given freely and voluntarily. Defendant offered no testimony to the contrary and did not except to the court's ruling. The sheriff's testimony in respect to what defendant told him is as follows:

"I asked him why he shot Ted Bell and he said he was about half-scared of Ted Bell, that Ted was a bully. He said, 'I am sorry it happened now and it never would have happened if I had not been drinking.' He did not at any time tell me that Ted was coming on him or had threatened him in any way. He told me that all the trouble he and Ted Bell had had was on the inside of the place."

All the evidence tended to show that the deceased died from a wound which defendant intentionally inflicted with a pistol. Defendant's motions for nonsuit were, therefore, properly denied. *S. v. Smith*, 268 N.C. 659, 151 S.E. 2d 596; *S. v. Redfern*, 246 N.C. 293, 98 S.E. 2d 322; *S. v. Gordon*, 241 N.C. 356, 85 S.E. 2d 322; 2 Strong's N. C. Index, Homicide, § 20. The jury was merciful to defendant in that it convicted him merely of manslaughter when it could well have convicted him of murder in the second degree. His assignment of error is overruled.

There are no exceptions or assignments of error to the exclusion or admission of evidence or to the charge of the court. The court's charge was full, clear, and accurate. Defendant's counsel candidly states in his brief: "Defendant's counsel advances no argument because a diligent review of the trial and of the record reveals that the State's evidence was sufficient to support the conviction and that no prejudicial error appears on the Record. But defendant's

appointed counsel respectfully tenders defendant's case for review by the Court." Mr. Shannonhouse is an able and experienced lawyer, and, after a careful examination of the record, we concur with his statement.

In the trial below there was

No error.