State v. Walden

STATE OF NORTH CAROLINA v. ALEEN ESTES WALDEN

No. 8110SC18

(Filed 21 July 1981)

1. **Criminal Law § 91 — charge dismissed — subsequent arrest warrant issued — no violation of Speedy Trial Act**

    Defendant's trial began within the 120-day limitation of the Speedy Trial Act where the State first proceeded against defendant by warrant dated 12 December 1979; that warrant charged defendant with misdemeanor child abuse on 8 December 1979; the charge was dismissed on 25 April 1980; a second warrant for defendant's arrest was issued on 3 April 1980; pursuant to this warrant defendant was indicted on 28 April 1980 for the 9 December 1979 assault upon her son; the evidence was uncontradicted that there were two separate assaults on 8 December and 9 December 1979, and there was nothing to indicate a plan or scheme of extended abuse of defendant's son; and defendant's trial began on 25 August 1980, which was within the 120-day limitation of the Speedy Trial Act.

2. **Criminal Law § 9.3; Parent and Child § 2.2 — aiding and abetting child abuse — sufficiency of evidence**

    In a prosecution of defendant for aiding and abetting another in his assault on defendant's one year old child where the only evidence for the State tended to show that, during the assault, defendant did absolutely nothing, the totality of the circumstances warranted the inference by the jury that defendant knew her silent presence during the beating inflicted upon her son would be regarded by the principal as encouragement and support, particularly in light of testimony that defendant had witnessed prior beatings by the principal, indicating that defendant was aware of the severity of his treatment of her children; that defendant had never interfered in the past; that defendant had herself beaten her children in the principal's presence; and that defendant lied and instructed her children to lie to conceal the principal's complicity in the assault.

3. **Criminal Law § 9.4 — aiding and abetting child abuse — instructions improper**

    In a prosecution of defendant for aiding and abetting a principal in the assault on defendant's one year old child, the trial court erred in instructing the jury that they could convict defendant if they found "that she was present with the reasonable opportunity and duty to prevent the crime and failed to take reasonable steps to do so," since the instruction allowed the jury to convict defendant if they found that she failed to exercise her parental duty to protect her child, but the indictment did not charge her with breach of her parental duty, but with assault.

APPEAL by defendant from *Farmer, Judge.* Judgment entered 27 August 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 30 April 1981.

On 28 April 1980, defendant was indicted under G.S. 14-32 as follows:

> "THE JURORS FOR THE STATE UPON THEIR OATH PRE-SENT that on or about the 9th day of December, 1979, in Wake County Aleen Estes Walden unlawfully and wilfully and feloniously assault Lamont Walden, age one year, with a certain deadly weapon, to wit: a leather belt with a metal buckle, inflicting serious bodiyly [sic] injuries, not resulting in death, upon the said Lamont Walden, to wit: numerous cuts and bruises causing severe blood loss and requiring hospitalization."

Lamont Walden is defendant's son. Defendant was convicted by a jury and sentenced to 5-10 years imprisonment.

The State's evidence was as follows: Three of defendant's children, aged 7, 8, and 10, testified that Bishop Hoskins, a friend of defendant's, beat Lamont with a belt on Sunday, 9 December 1979. Defendant was in the room when Lamont was being beaten but did not try to help Lamont. Defendant told the two oldest children to testify that their father beat them, or else they would never see her again. Lamont, who was one year old, was taken to the hospital by a social worker. He was hospitalized for over a week with severe injuries, including loss of blood. In the doctor's opinion, the injuries were caused by hard blows with a linear object.

The defendant's evidence tended to show that she loved all of her children and would not hurt them. The defendant's estranged husband came to the apartment and beat Lamont despite her efforts to prevent him. Bishop Hoskins never beat her children.

*Attorney General Edmisten by Assistant Attorney General Christopher P. Brewer for the State.*

*Brenton D. Adams for defendant appellant.*

CLARK, Judge.

[1] The State first proceeded against defendant by warrant dated 12 December 1979. That warrant charged defendant with misdemeanor child abuse on 8 December 1979. The charge was dismissed on 25 April 1980. A second warrant for defendant's ar-

rest was issued on 3 April 1980. It was pursuant to this second warrant that defendant was indicted for the 9 December 1979 assault upon her son. The case came on for trial on 25 August 1980. Defendant moved to dismiss the case under G.S. 15A-701(a1) which requires that defendant go to trial within 120 days of her arrest, criminal summons, waiver of indictment, or indictment. Subdivision (3) of the statute further provides that when a charge is dismissed and the defendant is later charged again "with the same offense or an offense based upon the same act or transaction or on the same series of acts or transactions connected together or constituting parts of a single scheme or plan" the trial must take place within 120 days of the original charge. Defendant argues that the misdemeanor child abuse on 8 December and the felonious assault on 9 December were part of the same series of acts or transactions connected together or constituting parts of a single scheme or plan. We cannot agree.

Evidence at trial tended to show that a witness heard a child crying from around 9:00 p.m. until 11:00 or 11:30 p.m. on the night of 8 December, and that he heard what sounded like a younger child "screaming" and "hollering" the next morning at about 10:00 a.m. These appear to have been two different incidents. Neither side offered evidence at trial that would suggest that these were connected incidents. To the contrary, the State's evidence was that the beating on Sunday morning, 9 December, came as an immediate reprisal for Lamont's failure to help unpack some clothes. The evidence is uncontradicted that there were two separate assaults on 8 December and 9 December 1979. There was nothing to indicate a plan or scheme of extended abuse of Lamont Walden, but simply a vicious temper which was independently triggered on 9 December and resulted in an assault immediately thereafter. Under these circumstances we fail to see how the institution of an action against defendant based upon an apparently unrelated beating, inflicted on the day before the beating which is the subject of the instant indictment, should begin the running of the Speedy Trial Act's 120-day-limitation. The State had 120 days from 28 April 1980 to bring defendant to trial. Her trial began on 25 August 1980, which was within this period.

[2] Defendant was charged and convicted under G.S. 14-32 as a principal in the second degree in that she aided and abetted Bishop Hoskins in his assault on young Lamont Walden. The only

evidence for the State tended to show that during the assault defendant did absolutely nothing. She did not hinder his actions, but neither did she help. The cases are abundant to the effect that, at least under ordinary circumstances, defendant could not be found guilty of assault on a theory of aiding and abetting for merely standing idly by while another committed the assault.

> "[O]ne who is present and sees that a felony is about being committed and does in no manner interfere, does not thereby participate in the felony committed. Every person may, upon such an occasion, interfere to prevent, if he can, the perpetration of so high a crime; but he is not bound to do so at the peril, otherwise, of partaking of the guilt. It is necessary, in order to have that effect, that he should do or say something showing his consent to the felonious purpose and contributing to its execution, as an aider and abettor."

*State v. Hildreth*, 31 N.C. (9 Ire.) 440, 444, 51 Am. Dec. 369, 371 (1849) (Ruffin, C.J.).

> "In the case of *S. v. Ham*, 238 N.C. 94, 76 S.E. 2d 346, this Court, in substance, held that in order to render one who does not actually participate in the commission of the crime guilty of the offense committed, there must be some evidence tending to show that he, by word or deed, gave active encouragement to the perpetrator or perpetrators of the crime, or by his conduct made it known to such perpetrator or perpetrators that he was standing by to render assistance when and if it should become necessary.

> In *S. v. Birchfield*, 235 N.C. 410, 70 S.E. 2d 5, Ervin, J., speaking for the Court, said: 'The mere presence of a person at the scene of a crime at the time of its commission does not make him a prinicpal in the second degree; and this is so even though he makes no effort to prevent the crime, or even though he may silently approve of the crime, or even though he may secretly intend to assist the perpetrator in the commission of the crime in case his aid becomes necessary to its consummation. *S. v Hart*, 186 N.C. 582, 120 S.E. 345; *S. v. Hildreth*, 31 N.C. 440, 51 Am. D. 369.' See also *S. v. Burgess*, 245 N.C. 304, 96 S.E. 2d 54 and *S. v. Banks*, 242 N.C. 304, 87 S.E. 2d 558."

*State v. Bruton*, 264 N.C. 488, 498, 142 S.E. 2d 169, 176 (1965) (Denny, C.J.).

A well-noted exception to the rule that a bystander may not be convicted for her mere presence at the crime scene is stated thus: " 'When the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as encouraging.' " *State v. Jarrell*, 141 N.C. 722, 725, 53 S.E. 127, 128, 8 Ann. Cas. 438, 439 (1906). *See also State v. Birchfield*, 235 N.C. 410, 70 S.E. 2d 5 (1952); *State v. Rankin*, 284 N.C. 219, 200 S.E. 2d 182 (1973); *In re Rich*, 49 N.C. App. 165, 270 S.E. 2d 500 (1980); 1 Wharton's Criminal Law (12 Ed.) § 246 (1932).

Because defendant's state of mind is in issue, and a defendant's mental processes are seldom provable by direct evidence, it is the rule in this jurisdiction that "the guilt of an accused as an aider and abettor may be establishd by circumstantial evidence." *State v. Redfern*, 246 N.C. 293, 297, 98 S.E. 2d 322, 326 (1957). In determining whether a person is guilty as a principal in the second degree, evidence of his relationship to the actual perpetrator, of motive tempting him to assist in the crime, his presence at the scene, and his conduct before and after the crime are circumstances to be considered. *State v. Birchfield*, 235 N.C. 410, 70 S.E. 2d 5 (1952).

Defendant in this case was more than a mere bystander and more than the mother of the assault victim. There was also evidence that she was very "close" to Hoskins, the perpetrator of the assault, and that he exerted a strong influence over her. The evidence further showed that Hoskins had beaten defendant's children in her presence before, that in the instant case he beat Lamont for an extended period of time, that during this assault defendant had responded to her son's anguished cries by telling him to hush, and that defendant had beaten her children in the past with a lamp cord in Hoskins' presence.

In addition to the above facts, there is the testimony of defendant at trial that it was not Hoskins, but her former husband who beat little Lamont and that she tried to protect the child, but was herself struck when she sought to interfere. This testimony was obviously not believed by the jury and could reasonably be regarded by the jury as tending "to reflect the

mental processes of a person possessed of a guilty conscience seeking to divert suspicion and to exculpate herself," *State v. Redfern*, 246 N.C. at 297-98, 98 S.E. 2d at 326, and her friend Hoskins as well.

We believe the totality of the circumstances warrants the inference by the jury that defendant knew her silent presence during the beating inflicted upon her son would be regarded by Hoskins as encouragement and support, particularly in light of the testimony that she had witnessed prior beatings by Hoskins (indicating that she was aware of the severity of his treatment of the children); that she had never interfered in the past; that she had herself beaten the children in Hoskins' presence; and that she lied and instructed her children to lie to conceal Hoskins' complicity in the assault.

[3] The Judge's instruction, however, went beyond the scope of the law just explained. The Judge instructed as follows:

> "So I charge that if you find from the evidence beyond a reasonable doubt, that on or about December 9th, 1979, Bishop Hoskins committed assault with a deadly weapon inflicting serious injury on Lamont Walden, that is that Bishop Hoskins intentionally hit Lamont Walden with a belt and that the belt was a deadly weapon, thereby inflicting serious injury upon Lamont Walden; and that the defendant was present at the time the crime was committed and did nothing and that in so doing the defendant knowingly advised, instigated, encouraged or aided Bishop Hoskins to commit that crime; or that she was present with the reasonable opportunity and duty to prevent the crime and failed to take reasonable steps to do so; it would be your duty to return a verdict of guilty of assault with a deadly weapon, inflicting serious injury."

In addition to the well-established ground just discussed, the jury was instructed to convict defendant if they found "that she was present with the reasonable opportunity and duty to prevent the crime and failed to take reasonable steps to do so."

This case was tried on a theory of aiding and abetting. The judge charged the jury on the theory of aiding and abetting. We have, however, been unable to discover any law to the effect that failure to prevent a crime by one who is present with the

reasonable opportunity and duty to prevent it constitutes aiding and abetting.

A correct instruction would have been that these circumstances could be considered by the jury as bearing on the communication to the perpetrator of defendant's encouragement and support. Both parties knew that the assault victim was defendant's son. The jury could infer from this mutual knowledge that defendant knew that Hoskins would view her refusal to perform her parental duty to protect her child as indicative of her support and encouragement of his actions. Unfortunately, this is not how the charge reads, and not how we think the jury would understand it.

As it appears in the record, the charge allowed the jury to find defendant guilty of assault with a deadly weapon if they found that she was present at the time of the assault and failed to exercise her parental duty to protect her child. The indictment did not charge her with breach of her parental duty, but with assault. Under the law of this State she could only be convicted of assault if she aided and abetted the perpetrator of the offense. The law makes no reference to the failure to perform a legal duty, but rather requires that defendant in some way communicate her encouragement to the perpetrator. The fact that defendant failed to perform her parental duty was relevant as one circumstance that the jury could consider in determining the issue of whether defendant knew that her presence would be regarded by the perpetrator as encouragement or support, but the jury's finding on this question of fact should not have been made dispositive of the case. The issue of defendant's state of mind should have been left to the jury to determine based upon *all* of the relevant circumstances. Defendant is entitled to a new trial in which the significance of her breach of her parental duty is properly explained as it relates to the issue of defendant's state of mind at the time of the crime.

We must order a new trial for error in the instructions to the jury, but we feel it appropriate to add that we find no error in admitting into evidence prior beatings of the child by defendant, which was relevant to show defendant's state of mind and her support to the perpetrator. Nor do we find error in admitting the opinion evidence of the physician since his examination of Lamont

on 10 December 1979 gave him sufficient foundation upon which to base his opinion of how the wounds occurred and when they were inflicted.

New trial.

Judges VAUGHN and WELLS concur.