**C.W. BLALOCK, Jr.,
Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 87–8020.**

United States Court of Appeals,
Eleventh Circuit.

May 18, 1988.

Gary P. Bunch, P.C., Carrollton, Ga., for plaintiff-appellant.

J. Michael Faulkner, Asst. U.S. Atty., Augusta, Ga., for defendant-appellee.

Before TJOFLAT, Circuit Judge[*],
and ROETTGER[**], District Judge.

PER CURIAM:

Appellant is the target of a federal grand jury investigation in the Southern District of Georgia. He claims that the assistant United States Attorney in charge of the investigation and the Federal Bureau of Investigation (FBI) agents who are participating in it are denying him due process of law by the manner in which they are performing their duties. He also claims that they have disclosed grand jury materials to unauthorized persons in violation of Fed.R. Crim.P. 6(e)(2).[1] To protect his rights under the due process clause and Rule 6(e)(2), appellant applied to the district court for an order permanently enjoining the grand jury's investigation of him. After entertaining the response of the assistant United States Attorney and affidavits submitted by appellant, the district court rejected his application. We affirm.[2]

## I.

The grand jury is investigating allegations that bid rigging, fraud, and various other federal crimes have occurred in the construction of the Georgia Power Company's Vogtle nuclear power plant. Appellant is a target of the investigation.[3] Most of the evidence heard by the grand jury thus far has been gathered by FBI agents. On occasion, these agents have collaborated with Georgia Power Company investigators who are looking into the allegations on behalf of the power company.

Appellant wants the grand jury's investigation brought to a halt for several reasons: (1) the investigation, which began in April 1985, has taken too long; (2) the prosecutor is using the grand jury's subpoena power to bring witnesses to his office so that he can conduct his own private investigation of appellant; (3) the prosecutor and an FBI agent involved in the grand jury investigation have commented that they are going to "break [appellant] or run him out of business"; (4) the prosecutor told a potential grand jury witness that appellant might harm her;[4] and (5) the prosecutor and several FBI agents have disclosed grand jury materials to unauthorized persons.

To support his application for injunctive relief in the district court, appellant presented two affidavits. The first affidavit came from a person who heard the prosecutor state that he intended to "break [appellant] or run him out of business." The second affidavit was from a person interviewed first by power company investigators and then by the FBI. The affiant stated that the latter asked him questions similar to those put to him by the power

---

[*] Honorable J.L. Edmondson recused himself after oral argument in this case. This opinion is rendered by a quorum of the panel. 28 U.S.C. § 46(d).

[**] Honorable Norman C. Roettger, Jr., U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Rule 6(e)(2) provides:
 A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.
 Under paragraph (3)(A)(ii), grand jury matters may be disclosed to "such government person-

nel ... as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." If disclosure is made to such government personnel, the FBI agents, for example, the persons to whom the information is disclosed are themselves subject to Rule 6(e)(2)'s secrecy requirement.

2. Because this is an appeal from the denial of an injunction, we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (1982).

3. The record does not disclose appellant's role in the construction of the power plant or whether other persons are being investigated by the grand jury.

4. The record does not disclose whether the prosecutor's alleged statements were intended to coerce the witness into testifying, or whether they were made to coerce her into not testifying.

company investigators. Appellant requested that the court hold an evidentiary hearing so that he could present live testimony in addition to these affidavits.

The prosecutor, responding to appellant's application for injunctive relief, argued that an evidentiary hearing was unnecessary. Assuming, for sake of argument, the truth of appellant's allegations, the prosecutor contended that appellant was not entitled to injunctive relief because he has an adequate remedy at law: if indicted, appellant can move the court to dismiss the indictment.

Following its receipt of the prosecutor's response, the court heard argument of counsel on appellant's request for injunctive relief. Appellant again urged the court to hold an evidentiary hearing and proffered the testimony of the witnesses who purportedly would appear. His proffers restated the factual allegations of impropriety made earlier.

After considering appellant's proffers and the prosecutor's response, the court declared a recess so that it could examine the transcripts of the grand jury proceedings, which the prosecutor had filed *in camera.* When the argument resumed, the court denied appellant's application for injunctive relief. The court stated that reading the transcripts of the grand jury's proceedings convinced it that the grand jury had been conducting itself in an orderly fashion and there appeared to be no reason to abort its investigation. As for appellant's claim that the prosecutor and the FBI had behaved improperly, the court noted that appellant had an adequate remedy at law, which he could pursue if indicted.

The court also noted that the behavior of the assistant United States Attorney and the FBI agents involved in the case had always been exemplary; it therefore doubted the truth of appellant's allegations of impropriety. Following this comment, appellant moved the court to recuse itself from further participation in the matter. His motion was denied.

Appellant now appeals. He asks us to vacate the district court's ruling and to remand the case for an evidentiary hearing before a different district judge, arguing that the judge who handled the matter should have recused himself. He also asks us to declare that his allegations of prosecutorial misconduct state a claim for injunctive relief. We decline both requests.

## II.

Appellant claims that both the due process clause of the fifth amendment and Fed.R.Crim.P. 6(e)(2) give the target of a grand jury investigation the right to injunctive relief to remedy the sort of governmental misconduct he has alleged here. We first address his claim under the due process clause.

## A.

■ Appellant's due process claim proceeds on two assumptions: first, that a target of a federal grand jury investigation has a constitutional right to be indicted by a grand jury proceeding untainted by the kind of conduct purportedly engaged in by the prosecutor and the FBI in this case; and second, that injunctive relief is available to preclude the grand jury from returning a tainted indictment.

We need not decide whether a target has the due process right appellant asserts. All that we need to say is that appellant is not entitled to an injunction because he has an adequate remedy at law.

It is settled law that "courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Equity always has been hesitant to act if its remedy would disrupt an ongoing grand jury investigation. *See, e.g., United States v. Calandra,* 414 U.S. 338, 349–50, 94 S.Ct. 613, 620–21, 38 L.Ed.2d 561 (1974); *Cobbledick v. United States,* 309 U.S. 323, 327–28, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940); *Blair v. United States,* 250 U.S. 273, 280–82, 39 S.Ct. 468, 470–71, 63 L.Ed. 979 (1919). In the few situations in which equity has intervened—principally in cases involving challenges to the validity of a

grand jury subpoena—relief has been granted only where there is no adequate remedy at law.[5] In the present case, appellant has an adequate legal remedy in the form of a motion to dismiss his indictment, if one is handed down.

### B.

Appellant interprets Rule 6(e)(2) to require a district court to grant a target of a grand jury investigation equitable relief whenever matters occurring before the grand jury have been improperly disclosed and further disclosures are likely. According to appellant, the district court should have enjoined the grand jury's investigation because both the prosecutor and the FBI have improperly disclosed matters that have taken place before that body. First, he contends that the FBI has revealed grand jury material to investigators employed by Georgia Power by questioning potential grand jury witnesses in the presence of such investigators; he further contends that the agents had to disclose grand jury information to question these witnesses effectively. Second, he alleges that in one instance the agents and power company investigators questioned a potential witness separately, but asked similar questions; he argues that such conduct suggests that the FBI has disclosed the direction taken by the grand jury investigation. Third, he contends that the prosecutor told one of appellant's competitors that the grand jury was likely to indict him

soon, thus revealing "matters occurring before the grand jury."

Appellant cites *In re Grand Jury Investigation (Lance),* 610 F.2d 202 (5th Cir.1980),[6] as authority for his contention that, on these facts, Rule 6(e)(2) gives him the right to enjoin the grand jury proceedings. In *Lance,* the Fifth Circuit, ignoring the question whether a target of a grand jury investigation has the right to bring an action under the Rule to enjoin the unauthorized disclosure of grand jury matters, held that a target has the right to ask the district court to require anyone wrongfully disclosing grand jury matters to show cause why he should not be held in civil contempt and sanctioned. *See id.; see also United States v. Eisenberg,* 711 F.2d 959 (11th Cir.1983) (remanding for determination whether contempt was warranted). In reaching this holding, the *Lance* court necessarily answered in the affirmative the question it chose to ignore—whether Rule 6(e)(2) gives a target a right of action for injunctive relief against the members of the grand jury and the prosecutors assisting them in their investigation. We make this statement because there is no such thing as an independent cause of action for civil contempt; civil contempt is a device used to coerce compliance with an in personam order of the court which has been entered in a pending case. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *Gompers v. Buck's Stove & Range Co.,*

---

**5.** As one commentator notes:

The scope of judicial review is narrowest while there is an ongoing grand jury investigation. The courts' concern for grand jury secrecy and for the grand jury's law enforcement function is generally greatest during the investigative phase of grand jury proceedings. Premature disclosure while an investigation is pending may frustrate the investigation by allowing the persons under investigation to escape, to suborn perjury, or to bribe or intimidate potential witnesses or members of the grand jury. Premature disclosure may also damage the reputations of persons the grand jury's final investigation may exonerate. These concerns are reflected in the traditional rules that severely limit the scope of judicial review during an ongoing grand jury investigation, such as the rule that witnesses may not challenge the grand jury's jurisdic-

tion. Some forms of judicial review are, however, available during the investigative phase of grand jury proceedings. A witness subpoenaed to testify or produce evidence before the grand jury may obtain judicial review by seeking to quash the subpoena, or by refusing to answer specific questions, which will ordinarily precipitate a contempt proceeding. Under some circumstances third parties may also intervene and seek to quash a subpoena or assert a testimonial privilege.

S. Beale & W. Bryson, Grand Jury Law & Practice § 10:18 (1986) (footnotes omitted).

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). Thus, in holding that a target may seek civil contempt sanctions for a violation of Rule 6(e)(2), *Lance* stands for the proposition that a target may bring suit for injunctive relief against the individuals subject to Rule 6(e)(2) and may invoke the district court's contempt power to coerce compliance with any injunctive order the court grants.

Because *Lance* is binding, we must determine whether appellant has made out a case for injunctive relief against the prosecutor or any of the FBI agents. We do so notwithstanding that appellant has filed no suit against these individuals in the district court.[7]

 *Lance* holds that if a grand jury target proffers evidence that government agents have improperly disclosed grand jury information in violation of Rule 6(e)(2), the district court must hold an evidentiary hearing to determine the truth of the proffer and the need for relief. *Lance*, 610 F.2d at 220–21. The first step in a Rule 6(e)(2) proceeding is, of course, to determine whether the target's proffer of evidence demonstrates a violation of the Rule. Typically, the target proffers affidavits or news articles suggesting that grand jury matters have been disclosed improperly. *See, e.g., Lance*, 610 F.2d at 216–18; *Eisenberg*, 711 F.2d at 961. If the target's proffer fails to establish a prima facie case, the court must dismiss the target's Rule 6(e)(2) case without an evidentiary hearing. *See United States v. Navarro–Ordas*, 770 F.2d 959, 968 (11th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986). In determining whether a prima facie case has been made, the court must consider a number of factors, including (1) whether there is "a clear indication that the [disclosure involved] 'matters occurring before the grand jury,'" *Lance*, 610 F.2d at 216; (2) whether it appears that the disclosure was made by a person subject to Rule 6(e)(2)'s requirement of secrecy, *id.* at 217;

(3) whether the relief requested will interfere with the grand jury proceedings, *id.* at 219; and (4) whether the government has sufficiently rebutted the target's showing. *Id.*

 Turning to appellant's allegation that the FBI agents violated Rule 6(e)(2), we first note that appellant sought no injunctive relief against any of the agents; rather, he sought an order enjoining the grand jury's investigation. Assuming, for sake of argument, however, that appellant applied for relief against the agents, we observe that the agents could not have violated Rule 6(e)(2) merely by allowing the Georgia Power investigators to be present during the questioning of potential grand jury witnesses. Rule 6(e)(2) only protects information revealing what has occurred, or will occur, inside the grand jury room. *Lance*, 610 F.2d at 216–17. The Rule does not protect from disclosure information obtained from a source other than the grand jury, even if the same information is later presented to the grand jury. *Id.; see also Anaya v. United States*, 815 F.2d 1373, 1380 (10th Cir.1987).

 To have violated Rule 6(e)(2), and thus to warrant the invocation of the district court's equity powers, the agents must have disclosed to the Georgia Power investigators information revealing what had transpired, or will transpire, before the grand jury. We do not find any indication that this occurred. That the agents and the power company investigators asked a potential witness similar questions in separate interviews does not, standing alone, establish that the agents revealed grand jury matters. Nor do we accept appellant's speculative allegation that the FBI's interrogation of potential witnesses in the presence of Georgia Power investigators necessarily revealed "matters occurring before the grand jury." We simply have no reason to believe that the agents did not keep confidential any grand jury matters of

---

7. Because *Lance* holds, in effect, that a target may bring suit for injunctive relief against the individuals subject to Rule 6(e)(2), the target must commence his injunctive action with a formal complaint. *See* Fed.R.Civ.P. 3. In the present case, appellant simply filed a motion in the district court, asking that court to issue an order barring further proceedings by the grand jury, without filing a complaint.

which they were aware. Accordingly, appellant fails to make out a prima facie Rule 6(e)(2) violation by the FBI agents.

With respect to appellant's allegation that the prosecutor told one of appellant's competitors that the grand jury was likely to indict him soon, we note that the decision whether to indict appellant is a "matter ... before the grand jury" and thus falls within the proscription of Rule 6(e)(2). *See Lance*, 610 F.2d at 217. Appellant substantiated his allegation with a proffer of evidence; he represented that a witness, whom he identified, would testify that the prosecutor made the statement. The prosecutor countered appellant's allegation with his own affidavit, in which he denied the disclosure. Faced with a swearing match, the district court refused to grant appellant the relief he was requesting, an injunction terminating the grand jury's investigation.

As noted, appellant did not seek an order enjoining the prosecutor. We will assume, however, that he asked for such relief and that an evidentiary hearing would have established the truth of the testimony he proffered. Nonetheless, an injunction against the prosecutor could not issue; appellant failed to establish one of the prerequisites to injunctive relief—that further injury was likely to occur.

### III.

■ Finally, appellant contends that the district judge should have recused himself because his favorable relationship with the prosecutor and the FBI agents destroyed his impartiality. The applicable statutory provision states that "[a]ny ... judge ... of the United States shall disqualify himself in any proceeding in which his impar-

tiality might reasonably be questioned." 28 U.S.C. § 455(a) (1982).[8] We have held that this statute provides an objective standard, that is, "whether a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986).

In the present case, we believe that the district judge's comments were extraneous and therefore irrelevant to his ruling. As stated above, the court found that even if governmental misconduct occurred as appellant had alleged, he was not entitled to injunctive relief. In other words, the judge assumed that the prosecutor and the FBI agents had engaged in the alleged misconduct, but nonetheless concluded that no injunction should issue. Once the judge made that assumption, his professional respect for them was no longer a factor affecting his decision on the merits. Thus, the judge properly denied appellant's motion for recusal.

AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring, in which ROETTGER, J., joins:

I concur in the court's judgment affirming the decision of the district court, and in Parts I and III of its opinion. I write separately because I am convinced that Fed.R.Crim.P. 6(e)(2) provides a grand jury target *no right of action for injunctive relief* to prevent the improper disclosure of "matters occurring before the grand jury." Accordingly, the district court should have dismissed the case for failure to state a claim for relief.[1]

Were we not bound by our "prior panel rule,"[2] I would reject our former circuit's

---

**8.** Section 455(b) mandates disqualification in other situations, none of which is applicable to this case.

**1.** As noted in the court's opinion, *ante*, at 1551 n. 7 and accompanying text, appellant instituted the proceeding below by filing an application for injunctive relief in the district court; he did not file a complaint in accordance with Fed.R. Civ.P. 3 naming the prosecutor or the FBI agents as defendants. Nonetheless, I treat appellant's application as a complaint for injunc-

tive relief against the prosecutor and the FBI agents.

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we held that a panel decision of the Fifth Circuit handed down on or before September 30, 1981, could not be overruled by a later panel but only by the en banc court. Thus, *In Re Grand Jury Investigation (Lance)*, 610 F.2d 202 (5th Cir.1980), is binding precedent on all Eleventh Circuit panels

holding in *In re Grand Jury Investigation (Lance)*, 610 F.2d 202 (5th Cir.1980), as insupportable; any reasonable interpretation of Rule 6(e)(2), I submit, forecloses the notion that the Rule provides a right of action for injunctive relief, enforceable by the district court's civil contempt power.

As the following discussion demonstrates, Rule 6(e)(2) is, in essence, nothing more than a statement by Congress that the law found in 18 U.S.C. § 401 (1982),[3] subjecting persons to a criminal contempt citation and punishment for misconduct, applies to the wrongful disclosure by such persons of "matters occurring before the grand jury." A criminal contempt proceeding arising out of a wrongful disclosure of grand jury matters is handled as a section 401 proceeding. First, someone, e.g., the attorney for the target of a grand jury investigation, informs the district court that an officer of the court has misbehaved. Then, if the court is reasonably satisfied that contumacious conduct has occurred, it charges the accused "orally ... in open court ... or ... by an order to

show cause or an order of arrest," *see* Fed.R.Crim.P. 42(b),[4] and promptly convenes a bench trial.[5] If convicted, the person receives a criminal sanction.

It is instructive to note at the outset that the person informing the court of the officer's misbehavior has no right to compel the court to charge the officer under Rule 42(b) and to convene a trial; because the complainant's interest is no greater than that of any other member of the public, the only thing that he has a right to do is bring the officer's misbehavior to the court's attention. With these preliminary observations in mind, I turn to a discussion of the *Lance* decision and the congressional intent behind Rule 6(e)(2)'s contempt provision.

## I.

Rule 6(e)(2) provides:

A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made

---

until it is overruled by the Eleventh Circuit sitting en banc.

3. Section 401 provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
(2) Misbehavior of any of its officers in their official transactions;
(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

4. Rule 42(b) governs "indirect" contempts, i.e., contempts committed outside the immediate presence of the judge. If a contempt is committed "in the actual presence of the court," and "the judge saw or heard" the contumacy, the contemner has committed a "direct" contempt and may be punished summarily, without the formal notice required by Rule 42(b). *See* Fed.R.Crim.P. 42(a); *In re Heathcock*, 696 F.2d 1362, 1365 (11th Cir.1983). Presumably, "direct" as well as "indirect" contempts can be charged by grand jury indictment. *See United States v. Williams*, 622 F.2d 830, 838 (5th Cir.1980) (en banc), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981); *United States v. Levya*, 513 F.2d 774, 778 (5th Cir.1975); *see also Stei-*

*nert v. United States District Court for the District of Nevada*, 543 F.2d 69, 70–71 (9th Cir. 1976); *cf. Green v. United States*, 356 U.S. 165, 187, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958).

It should be noted that the phrases, "in its presence or so near thereto," as used in section 401(1), *see supra* note 3, and "actual presence," as used in Fed.R.Crim.P. 42(a), are not synonymous. Section 401(1) provides the substantive authority for the court to punish contumacious acts committed in the vicinity of the court, e.g., on the courthouse steps. *See infra* note 14. Rule 42, however, determines the procedure for proving the contempt. Thus, a contempt committed, e.g., on the courthouse steps but not seen by the judge is "in [the court's] presence" for purposes of section 401(1), but is nonetheless an "indirect" contempt and the court cannot proceed summarily. *Carlson v. United States*, 209 F.2d 209, 213 (1st Cir.1954); *see also United States v. Wilson*, 421 U.S. 309, 315 n. 6, 95 S.Ct. 1802, 1806 n. 6, 44 L.Ed.2d 186 (1975).

5. If the contemner will be exposed to a prison sentence for a term of more than six months, the sixth amendment right to jury trial attaches, such that the contemner is entitled to be tried before a jury. *See Codispoti v. Pennsylvania*, 418 U.S. 506, 511–12 & n. 4, 94 S.Ct. 2687, 2691 & n. 4, 41 L.Ed.2d 912 (1974); *see also Bloom v. Illinois*, 391 U.S. 194, 211, 88 S.Ct. 1477, 1487, 20 L.Ed.2d 522 (1968). *See infra* text accompanying note 17.

under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. *A knowing violation of Rule 6 may be punished as a contempt of court.*

(Emphasis added).[6] In *In re Grand Jury Investigation (Lance)*, 610 F.2d 202 (5th Cir.1980), the target of a grand jury investigation, Bert Lance, moved the district court (1) to order everyone in the Department of Justice and the United States Attorney's office involved in the grand jury investigation to show cause why they should not be held in contempt for disclosing grand jury material in violation of Rule 6(e)(2);[7] (2) to examine the members of the grand jury for possible violations of the Rule; and (3) to order such other relief as the circumstances may require, including the dismissal of the grand jury and the termination of the investigation. In support of his motion, Lance proffered four newspaper articles describing the scope and progress of the grand jury's investigation, and represented that the information contained in the articles had been provided by members of the grand jury and by attorneys from the Department of Justice and the United States Attorney's office. He requested the court to convene an evidentiary hearing so that he could prove his allegations of misconduct.

The district court viewed Lance's proffer as inadequate to demonstrate a Rule 6(e)(2)

violation and denied his request for relief. Lance appealed. The court of appeals, construing Lance's motion to the district court as an application for an order requiring various members of the Department of Justice and the United States Attorney's office to show cause why they should not be adjudged in *civil*—as opposed to *criminal* —contempt and sanctioned for violating Rule 6(e)(2)'s secrecy requirements, found appellate jurisdiction under 28 U.S.C. § 1291 (1982) and *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and reversed.[8]

In its opinion, the court of appeals did not address the threshold question whether Rule 6(e)(2) gave Lance the right to seek injunctive relief against the Justice Department officials and the prosecutors. Instead, the court overlooked that question and moved to a subordinate question: whether Lance had the right to invoke the district court's civil contempt power, the device traditionally employed to enforce injunctions. Citing the last sentence of Rule 6(e)(2), the court held that a grand jury target has the right to initiate civil contempt proceedings to remedy violations of its secrecy requirements. The court then explained the procedure the district court should follow when a target chooses to exercise that right.

First, the district court must entertain on the merits a target's petition for the imposition of civil contempt sanctions against anyone who makes an unauthorized disclosure of grand jury material.[9] If the prof-

---

6. Under paragraph (3)(A)(ii), disclosure of "matters occurring before the grand jury" may be made to "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist in an attorney for the government in the performance of such attorney's duty to enforce federal criminal law."

7. The *Lance* decision is somewhat misleading because it refers to the rule of grand jury secrecy as Rule 6(e)(1). At the time Lance made his request for relief in the district court, the rule of secrecy was embodied in Rule 6(e)(1). However, after the district court denied Lance's request for relief but before the court of appeals issued its opinion, Rule 6(e) was amended and the rule of secrecy was renumbered as Rule 6(e)(2), where it appears today. To avoid confu-

sion, I refer to the rule of grand jury secrecy as if it had always been contained in Rule 6(e)(2).

8. Notwithstanding *Lance*'s reliance on section 1291 and the *Cohen* doctrine as a basis for appellate jurisdiction, in this case the panel bases its appellate jurisdiction solely on section 1292(a)(1) (appeal from a denial of an injunction). *See* per curiam opinion, *ante*, at 1548 n. 2. In so doing, the panel necessarily assumes that the proceeding below constituted a suit for injunctive relief. *See supra* note 1.

9. The *Lance* opinion does not describe the pleading the target should file in the district court when seeking the imposition of a civil contempt sanctions. As I observe in the text,

fer of evidence accompanying the target's request demonstrates a prima facie violation of the Rule, the district court must then hold an evidentiary hearing to determine the truth of the proffer. Finally, if the court determines that the proffer is true, it must impose appropriate sanctions.

## II.

Civil contempt is a mechanism by which a party may obtain the enforcement of an injunctive order a court has issued in his behalf. Rule 6(e)(2), of course, contains no language purporting to give a target the right to obtain an injunctive order of any kind, much less an order that is enforceable through the district court's contempt power.[10] If the Rule grants such a right, the right must be implied—specifically, it must be implied from the Rule's last sentence: "A knowing violation of Rule 6 may be punished as a contempt of court."

To imply such a right, a four-step deductive argument must be made. First, the premise is assumed: Rule 6(e)(2) authorizes the district court to use its civil contempt power to obtain compliance with the Rule's secrecy requirements. Second, because civil contempt lies only to enforce an injunctive order, it follows that Congress gave the district courts the authority to enjoin persons subject to the Rule's secrecy

requirements from the improper disclosure of grand jury matters. Third, since injunctions are adjudicative rather than administrative orders, they must be entered in article III "cases or controversies" between parties. Fourth, a proper party for bringing suit for injunctive relief is the target, because the target is the person whose interests Rule 6(e)(2)'s secrecy requirements were designed to protect.[11]

This argument fails because it assumes a false premise. As the following discussion makes clear, the sentence, "[a] knowing violation of Rule 6 may be punished as a contempt of court," authorizes the district court to employ *criminal* contempt as a means of punishing violators of the Rule for *past* disclosures; it does not authorize the district court to employ *civil* contempt sanctions to coerce *future* compliance with injunctive orders.

### A.

It has long been a policy of the law that grand jury proceedings be kept secret. Under English common law, grand jury proceedings were closed to the public and grand jury records were kept confidential. The English rule of grand jury secrecy has been incorporated into our federal common law and remains "an integral part of our criminal justice system." *Douglas Oil Co.*

---

the *Lance* court avoided the question whether the target has to bring suit for an injunction and obtain one before invoking the court's civil contempt power. If the target must first obtain an injunction, then his application for contempt sanctions should recite that an injunction issued and that the alleged contemner refuses to comply with its terms. If, on the other hand, an injunction is unnecessary, the target's application for contempt sanctions ought to be served on the alleged contemner, as required by Fed.R. Civ.P. 4, so to afford the alleged contemner due process of law. No such service was provided to the members of the grand jury or the prosecutors in this case. Instead, appellant proceeded ex parte.

**10.** Rule 6(e)(2)'s prohibition against grand jury disclosures is not *itself* an adjudicative order; it did not issue in a "case or controversy" between, for example, the target and the members of the grand jury. The prohibition is statutory. Absent a lawsuit in which the plaintiff seeks an injunction embodying the terms of the prohibi-

tion, the prohibition cannot possibly become an adjudicative order.

**11.** *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), supports this proposition. In *Douglas Oil,* the district court released the transcripts of a grand jury investigation to a litigant in a civil antitrust case. The target of the investigation, who had pled *nolo contendere* to an indictment returned at the conclusion of the grand jury's investigation, objected to the release, and the district court overruled the target's objection. The Supreme Court, rejecting the claim that the target lacked standing to object to the release, observed that a target's interest in preventing improper disclosures of grand jury material "is [an interest] legally protected under the Court's rulings concerning grand jury secrecy. One of the several interests promoted by grand jury secrecy is the protection of the innocent accused from disclosure of the accusations made against him before the grand jury." *Id.* at 218 n. 8, 99 S.Ct. at 1672 n. 8.

*v. Petrol Stops Northwest,* 441 U.S. 211, 218 n. 9, 99 S.Ct. 1667, 1672 n. 9, 60 L.Ed. 2d 156 (1979); *see also In re Russo,* 53 F.R.D. 564, 568–69 (C.D.Cal.1971) (tracing history of grand jury secrecy rule). The purposes of the rule of grand jury secrecy are

(1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Procter & Gamble Co.,* 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Rose,* 215 F.2d 617, 628–29 (3d Cir.1954)).

In 1946, Congress codified the rule of grand jury secrecy when it enacted the Federal Rules of Criminal Procedure. Rule 6(e) provided in part:

Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule.

In 1966, Congress expanded the scope of the secrecy requirement by placing typists and recorders under the Rule. Thus, all persons privy to grand jury information, with the exception of witnesses testifying before the grand jury, were under an obligation not to disclose the information unless so directed by a court.

In 1977, Congress relaxed the rule of grand jury secrecy to enhance the grand jury's investigative powers. Congress amended Rule 6(e) to allow the disclosure of grand jury matters to government employees assisting the grand jury in its investigation, such as FBI agents gathering evidence to present to the grand jury. *See* Fed.R.Crim.P. 6(e)(3)(A). To ensure that grand jury matters remained confidential, Congress subjected such government employees to the rule of secrecy. *See* Fed.R. Crim.P. 6(e)(2), (3)(B). Congress also amended Rule 6(e) to allow disclosure of grand jury information to another federal grand jury, *see* Fed.R.Crim.P. 6(e)(3)(C)(iii), or, if the information before the grand jury reveals that state criminal law has been violated, to the appropriate state authorities. *See* Fed.R.Crim.P. 6(e)(3)(C)(iv).

To allay concerns that prosecutors might exploit the relaxation of the rule of secrecy and misuse the investigative power of the federal grand jury by leaking grand jury information to government agencies investigating noncriminal conduct, such as the Internal Revenue Service, Congress expressly provided that a person who knowingly violates the Rule is subject to punishment for contempt. *See* Fed.R.Crim.P. 6(e)(2); *see also* S.Rep.No. 354, 95th Cong., 1st Sess. 7, *reprinted in* 1977 U.S.Code Cong. & Admin.News 527, 531 ("[T]he Rule seeks to allay the concerns of those who fear that [the relaxation of the Rule provided for by the amendment] will lead to misuse of the grand jury to enforce non-criminal Federal laws by ... providing a clear prohibition, subject to the penalty of contempt....").

In placing this contempt provision in the Rule, Congress codified a practice the district courts had been following for eighty years. As early as 1895, district courts

had been prosecuting breaches of the common law rule of grand jury secrecy as criminal contempts. *See, e.g., In re Summerhayes,* 70 F. 769, 773–74 (N.D.Cal. 1895); *Goodman v. United States,* 108 F.2d 516, 519 (9th Cir.1939); *Schmidt v. United States,* 115 F.2d 394, 396 (6th Cir. 1940); *cf. Atwell v. United States,* 162 F. 97, 102 (4th Cir.1908) (grand juror could not be held in criminal contempt if disclosure occurred after grand jury was discharged), *reversing In re Atwell,* 140 F. 368 (W.D. N.C.1905). After Congress codified the common law rule of grand jury secrecy by enacting Rule 6, courts continued to recognize that violations of grand jury secrecy could be prosecuted as criminal contempts.

**12.** *See supra* note 3.

**13.** Section 268 provided:
That the power of the several courts of the United States to issue attachments and inflict summary punishments for contempts of court, shall not be construed to extend to any cases except the misbehaviour of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehaviour of any of the officers of the said courts in their official transactions, and the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, rule, decree, or command of the said courts.

Section 268 was part of the Act of March 2, 1831, 4 Stat. 487. Prior to that Act, the federal courts had very broad criminal contempt power. Under section 17 of the Judiciary Act of September 24, 1789, federal courts had the "power ... to punish by fine or imprisonment, at the discretion of said courts, all contempt of authority in any cause or hearing before the same." Thus, the Act of 1831 was "a drastic delimitation by Congress of the broad undefined power of the inferior federal courts under the Act of 1789." *Nye v. United States,* 313 U.S. 33, 45, 61 S.Ct. 810, 814, 85 L.Ed. 1172 (1941). The Act of 1831 was not intended to limit a court's power to punish disobedience to its lawful orders, however. *See Green v. United States,* 356 U.S. 165, 171–72, 78 S.Ct. 632, 636, 2 L.Ed. 2d 672 (1958).

**14.** Courts may base a Rule 6(e)(2) contempt citation on a number of different theories. First, section 401(2) provides that a court may impose criminal contempt for "[m]isbehavior of any of its officers in their official transactions." All of the persons subject to Rule 6(e)(2) are "officers" of the court. *See, e.g., United States v. Howard,* 569 F.2d 1331, 1335 n. 7 (5th Cir.) (stenographer is an "officer"), *cert. denied,* 439

*See, e.g., United States v. Smyth,* 104 F.Supp. 283, 293 & n. 40 (N.D.Cal.1952); *United States v. Consol. Laundries Corp.,* 159 F.Supp. 860, 866 & n. 9a (S.D.N.Y. 1958); *see also* L. Orfield, *The Federal Grand Jury,* 22 F.R.D. 343, 400, 448 (1959) (author, member of United States Supreme Court Advisory Committee on Rules of Criminal Procedure, notes that criminal contempt is accepted sanction for violations of Rule 6). These courts proceeded under the theory that the criminal contempt statute, 18 U.S.C. § 401 (1982),[12] like its predecessor, section 268 of the Judicial Code,[13] gave them the authority to cite persons who violated grand jury secrecy for criminal contempt.[14]

U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *United States v. Vetere,* 663 F.Supp. 381, 386 (S.D.N.Y.1987) (prosecutors assisting in grand jury investigation may be held in contempt); *United States v. Smyth,* 104 F.Supp. 283, 293 (N.D.Cal.1952) (grand jurors, prosecuting attorneys, and their assistants are "officers"); *cf. Cammer v. United States,* 350 U.S. 399, 405, 76 S.Ct. 456, 459, 100 L.Ed. 474 (1956) (all members of the bar are not "officers"; section 401(2) only applies to those "persons who serve as conventional court officers and are regularly treated as such in the law"). If such officers knowingly violate Rule 6, their conduct unquestionably amounts to "[m]isbehavior ... in [their] transactions." Accordingly, section 401(2) authorizes a court to impose criminal contempt on persons who violate the Rule.

Second, some courts have held that an improper disclosure of grand jury matters is also punishable under section 401(3). That section authorizes a court to treat "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command" as criminal contempt. In *United States v. Howard,* 569 F.2d 1331, 1336 (5th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978), our predecessor circuit held that Rule 6(e)(2) was a "rule" within the meaning of section 401(3), such that a person is subject to a criminal contempt citation for knowingly disobeying the Rule's secrecy requirements. The Sixth Circuit has adopted this interpretation of section 401(3). *See United States v. Smith,* 815 F.2d 24, 25 (6th Cir.1987); *United States v. Jeter,* 775 F.2d 670, 685 (6th Cir.1985) (Merritt, J., dissenting), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986).

Finally, in certain circumstances an improper disclosure of grand jury information may be punishable under section 401(1). Section 401(1) provides that a court may treat as criminal contempt "[m]isbehavior of any person in its presence or so near thereto as to obstruct the

In 1977, when Congress amended Rule 6 and declared that "[a] knowing violation of Rule 6 may be punished as a contempt of court," Congress did not intend that the courts begin enforcing the Rule through their civil contempt power; rather, Congress was lending its approval to the courts' longstanding practice of punishing disclosures of grand jury matters as criminal contempt. This congressional intent is apparent from the language of the Rule. The word "knowing" implies that criminal intent is a prerequisite to a finding of contempt.[15] Criminal intent is not an element of civil contempt. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). The Rule's statement that "[a] knowing violation ... may be *punished* as a contempt of court" obviously implies that such a violation constitutes *criminal*, as opposed to *civil*, contempt.

Congress' intent that criminal contempt be employed to sanction violations of the Rule is also found in the Senate Judiciary Committee's use of punitive language in the report the Committee issued on the proposed amendments to Rule 6(e). *See* S.Rep. No. 354, 95th Cong., 1st Sess. 7, *reprinted in* 1977 U.S.Code Cong. & Admin.News 527, 531 ("the Rule ... provid[es] a clear *prohibition*, subject to the *penalty* of contempt"). In sum, given the language of the Rule and the Senate Judiciary Committee's report, and the historic use of criminal contempt as the means for enforcing grand jury secrecy, I conclude that Congress intended to deter the improper disclosure of grand jury matters through the use of criminal contempt.

**B.**

Why Congress chose criminal contempt rather than civil contempt as the means for coercing compliance with Rule 6(e)(2)'s secrecy requirement becomes apparent when one considers the purposes the two contempts are designed to achieve. The purpose of criminal contempt is punitive, not remedial; it enables a court to vindicate its authority by punishing a person who has behaved contumaciously. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911) (when purpose of sanction is punitive, contempt is *criminal* contempt); *Wolfe v. Coleman*, 681 F.2d 1302, 1306 (11th Cir.1982). As noted in my previous discussion, the putative contemner's prosecution is initiated by the district court, pursuant to notice.[16] Because the prosecution is a criminal proceeding under 18 U.S.C. § 401 (1982),[17] the contemner is presumed innocent, *see Gompers*, 221 U.S. at 444, 31 S.Ct. at 499, is entitled to have the government prove his guilt beyond a reasonable doubt, *id.*, cannot be compelled to testify against himself, *id.*, and is entitled to a jury trial if he is to be imprisoned for more than six months. *See Codispoti v. Pennsylvania*, 418 U.S. 506, 511–12 & n. 4, 94 S.Ct. 2687, 2691 & n. 4, 41 L.Ed.2d 912 (1974); *see also Bloom v. Illinois*, 391 U.S. 194, 211, 88 S.Ct. 1477, 1487, 20 L.Ed.2d

---

administration of justice." This subsection contains a geographic limitation, such that the contumacious act must occur in the immediate vicinity of the court, e.g., in the courtroom, the jury room, the grand jury room, or the hallways outside. *See Nye v. United States*, 313 U.S. 33, 48–51, 61 S.Ct. 810, 815–17, 85 L.Ed. 1172 (1941); *Ex parte Savin*, 131 U.S. 267, 277, 9 S.Ct. 699, 702, 33 L.Ed. 150 (1889); *In re Stewart*, 571 F.2d 958, 966 (5th Cir.1978). Section 401(1) also requires that the misconduct result in actual obstruction of justice. *See In re McConnell*, 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962); *Ex parte Hudgings*, 249 U.S. 378, 383, 39 S.Ct. 337, 339–40, 63 L.Ed. 656 (1919). Accordingly, if the improper disclosure of grand jury matters occurs in the vicinity of the court and results in actual obstruction of justice, the person making the disclosure may be prosecuted and punished under section 401(1).

**15.** "Knowing" denotes the degree of intent or *mens rea* required for criminal conviction. *See, e.g., United States v. International Minerals & Chem. Corp.*, 402 U.S. 558, 563–65, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971); *United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir.1986); *United States v. Tolkow*, 532 F.2d 853, 858 (2d Cir. 1976).

**16.** *See supra* note 4 and accompanying text.

**17.** If the contumacy is a crime in itself, the conduct is prosecuted under 18 U.S.C. § 402 (1982). Because the disclosure of grand jury matters does not constitute a crime in itself, that statute does not apply.

522 (1968). One convicted of criminal contempt may be fined or imprisoned, or both, the extent of the fine or the term of imprisonment being a matter committed to the district court's discretion.

The purpose of civil contempt, on the other hand, is to force compliance with an injunctive order issued on behalf of the complainant; its purpose is not to punish past misconduct.[18] *See United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). The party in whose favor the order has been entered initiates the civil contempt proceeding. Representing that his opponent has refused to obey the court's order, the party moves the court to invoke its civil contempt power to coerce the opponent's compliance with the order. If the motion makes out a prima facie case of noncompliance, the court issues an order requiring the opponent to show cause why he should not be held in civil contempt and sanctioned, by fine or imprisonment, for refusing to obey the underlying order. If the opponent advances no lawful excuse for his disobedience and indicates no willingness to bring himself into immediate compliance with the court's underlying order, the court will adjudge him in civil contempt and impose the sanction most likely to achieve compliance. The sanction will remain in force until the contemner purges himself of the contempt. Thus, it is often repeated that civil contemners "carry the keys of their prisons in their own pockets." *In re Nevitt*, 117 F. 448, 461 (8th Cir.1902).

Civil contempt, properly employed, could not be expected to coerce compliance with the kind of prohibition contained in Rule 6. Posit a case in which the prosecutor leaks to the press grand jury information concerning the target. Pursuant to the rule established in *Lance*, the target moves the court to order the prosecutor to show cause why he should not be held in civil contempt and sanctioned. The court issues the order, and at the show cause hearing, the prosecutor admits responsibility for the disclosure. Suppose further that the court does not sanction the prosecutor, but rather warns the him that it will tolerate no further disclosure—as the district court did in *Lance*. The prosecutor, however, continues to leak additional grand jury matters to the press. On the target's application, the court holds another show cause hearing, finds that the prosecutor violated the Rule, and concludes that the issuance of a civil contempt sanction is now necessary to ensure future compliance with the Rule. Believing that a fine will not ensure compliance, the court chooses to incarcerate the prosecutor, and the United States Marshal takes him into custody. To avoid transforming the incarceration into punishment for past misconduct—the sanction for criminal contempt—the court advises the prosecutor that his incarceration will be terminated just as soon as he obeys the law. In other words, the court gives the prosecutor the "key to his prison"; he can purge himself of the contempt and obtain his release from custody by not making further disclosures of grand jury matters.

To purge himself and obtain his release from custody, the prosecutor must (1) satisfy the court that matters concerning the target remain before the grand jury that have not been disclosed previously, or, if everything has been disclosed, that further matters concerning the target will be presented to the grand jury;[19] and (2) con-

**18.** In a given case, a civil contempt sanction may coincidentally be punitive; similarly, a criminal contempt sanction may coincidentally be remedial. As the Supreme Court stated:

It is true that either form of imprisonment [for contempt] has also an incidental effect. For if the [proceeding is for] civil [contempt] and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the imprisonment is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change imprisonment which is merely coercive and remedial, into that which is solely punitive in character, or *vice versa*.

*Gompers*, 221 U.S. at 443, 31 S.Ct. at 498–99.

**19.** If no potential existed for future disclosures concerning the target, there would obviously be no need to hold the prosecutor in civil contempt and to impose sanctions to coerce his future

vince the court, albeit with a self-serving promise, that he will not disclose these matters in violation of the Rule. In short, the prosecutor must promise to obey the law, and he must do so in a way that convinces the court that he will abide by his promise. The prosecutor can give the court no further assurances.

The prosecutor promptly makes such a promise, but the court is not convinced; consequently, he will remain in custody indefinitely, until the court changes its mind. In this scenario, the court's decision to keep the prosecutor in custody is based on the prosecutor's past misconduct in leaking the grand jury information to the press; in other words, the prosecutor's previous disregard of the Rule's prohibition renders his promise worthless in the eyes of the court. The court's decision has therefore transformed the case from a proceeding for civil contempt into one for criminal contempt. The prosecutor is not being held in custody to coerce his future compliance with the Rule's secrecy requirement; rather, he is being punished for his past misdeeds. The law, however, precludes such a transformation;[20] the court's only option, therefore, is to order the prosecutor's release upon his mere promise to obey the law.

The foregoing hypothetical demonstrates the futility of a civil contempt sanction as a means of ensuring grand jury secrecy. The only purpose a show cause hearing can serve—if the courts are to honor the distinction between civil and criminal contempt—is to give the court a forum in which to ask the contemner to obey the law. It is plain to me, therefore, that Congress did not intend that civil contempt lie as a sanction for Rule 6(e)(2) violations.[21]

compliance with the Rule. Hence, before imposing civil contempt sanctions, the court must determine that a potential exists for future disclosures by the prosecutor. To make that determination, the court must inquire into the status and direction of the grand jury's investigation and acquaint itself with the information before the grand jury. Such an inquiry, especially when conducted in the context of an adversarial civil contempt proceeding, would inevitably lead to the disclosure of grand jury matters, the very vice Rule 6(e)(2) was designed to avoid.

It is true that the court could conduct the inquiry *in camera,* thus avoiding the disclosure of secret information to the target and his lawyer, but such *in camera* protection would be short-lived. If, for example, the court refused to sanction the prosecutor, the target would appeal, as did the target in *Lance.* In prosecuting his appeal, the target's attorney would no doubt ask to see the information examined by the district court *in camera,* arguing that without the information, he could not render his client effective representation. If, on the other hand, the court held the prosecutor in contempt and imposed sanctions, as in my hypothetical case, and the prosecutor appealed, his attorney would ask to see the information. In either case, if the court of appeals provided the information to counsel for the appellant, it would, in evenhanded fairness, provide the information to counsel for the appellee.

In the present case, the district court reviewed the grand jury transcripts *in camera,* thus inhibiting appellant from learning what had transpired before the grand jury. After appellant took this appeal, he moved the district court to release to him a copy of the grand jury transcripts. The district court denied the request. This panel did not grant appellant access to the transcripts because his application for injunctive relief did not establish a prima facie case of a Rule 6(e)(2) violation. Had appellant's allegations demonstrated such a prima facie case, this panel would have remanded the case for an evidentiary hearing, as required by *Lance.* On remand, what the transcripts contain would have become relevant, and in the course of the evidentiary hearing their content would have been disclosed.

**20.** It requires no citation of authority to say that a district court may not, even unwittingly, employ a civil contempt proceeding to impose what, in law, amounts to a criminal contempt sanction. A civil contempt proceeding contains few of the safeguards constitutionally mandated in a criminal contempt proceeding. *See supra* text accompanying note 17. When a district court employs civil contempt procedures to punish a contemner, it necessarily deprives the contemner of his constitutional rights and renders his contempt citation a nullity.

**21.** The following scenario illustrates another reason why Congress could not have intended that civil contempt be employed to prevent the wrongful disclosure of grand jury matters. As I have explained, civil contempt is designed to coerce compliance with an injunctive order. Posit, therefore, a case in which a target has obtained the injunction appellant sought in the court below. Following the issuance of the injunction, the target claims—as appellant did below—that the prosecutor and agents of the FBI continued to disclose grand jury matters, and the target moves the court to issue an order to show cause why the prosecutor and the agents should not be held in civil contempt and sanctioned. Because the allegations of the target's motion, taken as true, demonstrate violations of

## III.

Given the falsity of the premise assumed in *Lance*—that Rule 6(e)(2) authorizes a target to seek *civil* contempt sanctions—it is clear that the Rule does not implicitly afford a target a right of action for injunctive relief. Accordingly, when a target makes application for such relief, the district court should dismiss the application for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

A target is not without recourse to halt the improper disclosure of grand jury matters, however. The target, like any other member of the public, may, and should, bring the disclosure to the district court's attention. Once put on notice of an improper disclosure, the court can exercise its supervisory power over grand jury proceedings and take administrative steps to ensure the maintenance of secrecy. If satisfied that a knowing disclosure has occurred, the court can also invoke its power to cite the transgressor for criminal contempt under 18 U.S.C. § 401 (1982), in accordance with the procedure prescribed by Rule 42(b). Finally, the target can bring the improper disclosure to the attention of the United States Attorney, who may seek an indictment under section 401.[22]

If the district court or the United States Attorney declines to act on the target's allegation, the target has no recourse in the court of appeals. The bringing of a criminal contempt proceeding is a matter committed to the sole discretion of the district court or the prosecutor, as the case may be. If a criminal contempt prosecution ensues, the target still has no recourse. He is not a party to the proceeding; rather, he is simply a member of the public who has complained to the prosecutorial authority that a crime may have occurred. *See Kienle v. Jewel Tea Co.*, 222 F.2d 98, 100 (7th Cir.1955) ("[W]hether such a proceeding should be instituted is a matter concerning [the alleged contemner] and the public, in which [the complainant's] interest is no greater than that of every member of the public."); *see also Gompers*, 221 U.S. at 444–45, 31 S.Ct. at 499; *Lance*, 610 F.2d at 221 n. 2 (Kravitch, J., dissenting); *Ramos Colon v. United States Attorney for the District of Puerto Rico*, 576 F.2d 1, 5 (1st Cir.1978); *Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336, 1343 (3d Cir.1976).

the Rule, the court issues a show cause order and convenes an evidentiary hearing. At the hearing, the prosecutor and the agents, having the burden of going forward with the evidence, attempt to satisfy the court that the disclosures they have made were not disclosures of matters before the grand jury. To do that, they proceed to explain to the court what was and what was not before the grand jury when they made their disclosure. After they tender their explanations, the target's attorney cross-examines them, and before the hearing has concluded the target has learned virtually everything that has transpired before the grand jury concerning the target. If the court receives the prosecutor's and the agents' explanations *in camera* and denies the target's attorney the right of cross-examination, the result is the same; the target obtains the information on appeal, as I explained earlier. *See supra* note 19.

Under the holding in *Lance*, a situation like this one could occur many times during the course of a grand jury investigation, as many times as the target's attorney could demonstrate in a motion for an order to show cause that someone subject to the Rule's secrecy requirement made an improper disclosure. The poten-

tial for abuse and the consequent disruption of the grand jury investigative process is obvious.

**22.** *See supra* note 4. The grand jury may also return an indictment for obstruction of justice. Under 18 U.S.C. § 1503 (1982),

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand ... juror, or officer in or of any court of the United States, ... in the discharge of his duty, ... or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Thus, a person who knowingly violates Rule 6(e)(2) or induces or attempts to induce another person to violate the Rule may be indicted for obstruction of justice under section 1503. *See United States v. Howard*, 569 F.2d 1331, 1336 (5th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *see also United States v. Jeter*, 775 F.2d 670, 676–77 (6th Cir. 1985), *cert. denied*, 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986).

I join in the court's judgment because it affirms the district court. I write separately because I am concerned about the mischief *Lance*'s flawed rationale is causing the orderly process of grand jury investigations.